N. C. RHODES, ADMINISTRATOR OF THE ESTATE OF N. CECIL RHODES, JR., DECEASED, v. THE CITY OF ASHEVILLE, THE CITY OF HENDERSONVILLE, AND HENDERSON COUNTY.

(Filed 23 March, 1949.)

**1. Municipal Corporations § 6—**

All lawful enterprises of a municipal corporation must be engaged in for a public purpose, and the fact that a particular enterprise is for a public purpose does not determine whether such enterprise is a corporate or proprietary function, in the exercise of which the municipality is subject to tort liability, or a governmental function immune from such liability.

**2. Same—**

Activity of a municipality in the exercise of judicial, discretionary or legislative authority conferred by its charter for the better government of that portion of the people of the State who reside within its limits, is a governmental function, in the exercise of which no tort liability exists unless expressly provided by statute, while a commercial activity or one engaged in by the municipality in its ministerial or corporate character for the private advantage of the compact community, is a ministerial or proprietary function in the exercise of which it is subject to tort liability.

**3. Municipal Corporations § 8—**

A municipality is liable for torts committed by it in the operation and maintenance of a municipal airport, since such activity is a proprietary or corporate function of the municipality, and G.S. 63-50, declaring such activity to be a public, governmental and municipal function exercised for a public purpose, does not purport to exempt it from tort liability.

**4. Counties §§ 2, 3, 24—**

While ordinarily a county does not perform any function except in a governmental capacity, in the exercise of which it is not subject to tort liability, where a statute authorizes it to engage in a function which is proprietary or corporate in character, the county may be held liable in tort to the same extent as a municipality engaged in the same activity.

5. **Same—**

In operating and maintaining an airport a county engages in a proprietary or corporate function, in the exercise of which it is subject to tort liability. G.S. 63-57.

6. **Pleadings § 17c—**

Where a complaint alleges that plaintiff's intestate was shot and killed by a night watchman employed by a municipal airport, demurrer on the ground that the watchman was an airport guard and at the time was exercising police powers conferred by G.S. 63-53 (b), is bad as a "speaking. demurrer" since the defect does not appear on the face of the complaint.

7. **Municipal Corporations § 7: Counties § 24—**

Where a night watchman at a municipal airport kills a person on the property at nighttime, the question of whether he was acting in his capacity as servant or agent of the airport or in his capacity as a police officer, is a question of fact to be determined by the jury on an issue raised by proper pleadings. G.S. 63-53 (b), G.S. 63-58.

APPEAL by defendant from *Pless, J.,* at Chambers in Marion, N. C., 27 December, 1948. From HENDERSON.

This is an action to recover damages from the defendants for the alleged wrongful death of the plaintiff's intestate at the Asheville-Hendersonville Airport, in Henderson County.

The complaint alleges that the Asheville-Hendersonville Airport is owned, operated, maintained, managed and controlled by the three defendants in their corporate character and capacity, and in the exercise of powers for their own advantage, and that it was so operated and managed at the time of the death of plaintiff's intestate.

It is further alleged that the Asheville-Hendersonville Airport Board, as the operating agency of the defendants, employed one J. R. Calton, who was required to be on duty at the airport at night, to watch the property and safeguard the facilities and to have general control over the property during the hours he was on duty and when the manager was not present; that plaintiff's intestate arrived at the airport about 2:30 a.m., 7 August, 1947, and almost immediately upon his arrival there, he was shot and killed by the said J. R. Calton, agent, servant and employee of the defendants, and that such killing was wrongful, negligent, unjustified, unnecessary and felonious.

This case was here on appeal at the Fall Term, 1948, from an order which disallowed the defendant's motion in part, to strike certain allegations of the complaint, and reported in 229 N.C. 355, 49 S.E. 2d 638. Thereafter defendants, in apt time, filed a demurrer to the complaint and challenged the sufficiency of the facts alleged to state a cause of action, for the reason that G.S. 63-50 declares that "the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment

and operation of airports and other navigation facilities and the exercise of any other powers herein granted to municipalities are hereby declared to be public, governmental and municipal functions exercised for a public purpose and matters of public necessity . . ."

The defendants further demur on the ground that the defendant Henderson County cannot be held liable, for the reason that a distinction exists in law as between a county and a city, in that a county is not liable in tort for the wrongs of its officials and employees unless such liability is created by statute; and further that J. R. Calton at the time of the death of plaintiff's intestate, was an airport guard and police officer, and that the defendants, and each of them, in maintaining, regulating and operating the said Asheville-Hendersonville Airport, and in watching and safeguarding the same, through said guard and police officer, J. R. Calton, were exercising governmental functions and acting in a governmental capacity, and cannot be held liable to the plaintiff on the facts alleged.

The demurrer was overruled and the defendants appealed to the Supreme Court and assign error.

*R. L. Whitmire for plaintiff, appellee.*

*Edwin S. Hartshorn, Arthur Shepherd, L. B. Prince, and Robt. W. Wells for defendants, appellants.*

DENNY, J. We think the demurrer interposed by the defendants involves three questions which should be considered on this appeal. (1) In the operation of a municipal airport, pursuant to the authority contained in Chapter 63 of the General Statutes of North Carolina, Sections 63-1 to 63-58 inclusive, does a municipality act in a proprietary or governmental capacity? (2) If such an enterprise is a proprietary one, may a county participating therein pursuant to the authority contained in the above statutes, be held liable in tort? And (3) was J. R. Calton acting as the servant or agent of the defendants at the time he killed the plaintiff's intestate, or was he exercising police powers which G.S. 63-53 (b) provides may be exercised by airport guards?

A municipal corporation cannot legally engage in any enterprise in its governmental or proprietary capacity which does not come within the meaning or definition of a public purpose. *Nash v. Tarboro,* 227 N.C. 283, 42 S.E. 2d, 209.

And even though a municipal activity has been held to be for a public purpose, we may still have difficulty in determining whether such activity is a corporate or proprietry function, and is therefore subject to suits in tort, or a governmental function and immune from such suits.

These functions were defined by *Justice Barnhill,* in speaking for the Court, in *Millar v. Wilson,* 222 N.C. 340, 23 S.E. 2d 42, in the following language: "Any activity of the municipality which is discretionary, political, legislative and public in nature and performed for the public good in behalf of the State, rather than for itself, comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary. When injury or damage results from the negligent discharge of a ministerial or proprietary function it is subject to suit in tort as a private corporation. 6 McQuillin, Mun. Corps. 2d, sec. 2792.. While acting 'in behalf of the State' in promoting or protecting the health, safety, security or general welfare of its citizens, it is an agency of the sovereign. No action in tort may be maintained for·resulting injury to person or property," citing numerous authorities.

And in *Broome v. Charlotte,* 208 N.C. 729, 182 S.E. 325, *Justice Devin,* speaking for the Court, laid down the following distinctions between proprietary and governmental powers: "In its public or governmental character a municipal corporation acts as agent of the State for the better government of that portion of its people who reside within the municipality, while in its private character it exercises powers and, privileges for its own corporate advantage. When a municipal corporation is acting in its ministerial or corporate character in the management of property for its own benefit, it may become liable for damages caused by the negligence of its agents subject to its control. But when the city is exercising the judicial, discretionary, or legislative authority conferred by its charter, or is discharging a duty imposed solely for the benefit of the public, it incurs no liability for the negligence of its agents, unless some statute subjects the corporation to responsibility. *Moffitt v. Asheville,* 103 N.C. 237; *Parks-Belk Co. v. Concord,* 194 N.C. 134."

The defendants contend that the provisions of G.S. 63-50, which ·declares the construction, maintenance and operation of an airport by municipalities pursuant to the provisions of Chapter 63 of the General Statutes of North Carolina, "to be public, governmental and municipal functions exercised for a public purpose and matters of public necessity," and the use of the property and equipment in connection with the construction, operation and maintenance of a municipal airport is "to be acquired and used for public, governmental and municipal purposes and as a matter of public necessity" are controlling, and therefore, the acts of the officers, agents and employees of the municipalities operating such airport are immune from suits in tort.

The answer to the question raised is not that simple. Since this Court handed down the decision in 1903, in the case of *Fawcett v. Mt. Airy,* 134 N.C. 125, 45 S.E. 1029, the construction, maintenance and operation

of a water and light plant by a municipality, has been held to be a necessary governmental expense. Even so, it has been uniformly held that, except as to certain exempted services such as furnishing water to extinguish fires, *Klassette v. Drug Co.,* 227 N.C. 353, 42 S.E. 2d 411; *Mabe v. Winston-Salem,* 190 N.C. 486, 130 S.E. 169; *Mack v. Charlotte,* 181 N.C. 383, 107 S.E. 244; G.S. 160-255, a municipality in operating a water or light plant or other business function does so in its corporate or proprietary capacity. *Fisher v. New Bern,* 140 N.C. 506, 53 S.E. 342; *Harrington v. Wadesboro,* 153 N.C. 437, 69 S.E. 261; *Terrell v. Washington,* 158 N.C. 281, 73 S.E. 888; *Woodie v. Wilkesboro,* 159 N.C. 353, 74 S.E. 924.

The construction and maintenance of streets by a municipality is a governmental and not a proprietary function, but since the decision in *Bunch v. Edenton,* 90 N.C. 431 (1884), it has been uniformly held in this jurisdiction that municipalities may be held liable in tort for failure to maintain their streets in a reasonably safe condition, and they are now required by statute to do so, G.S. 160-54. *Hamilton v. Rocky Mount,* 199 N.C. 504, 154 S.E. 844; *Speas v. Greensboro,* 204 N.C. 239, 167 S.E. 807; *Broome v. Charlotte, supra; Whitacre v. Charlotte,* 216 N.C. 687, 6 S.E. 2d 558; *Hunt v. High Point,* 226 N.C. 74, 36 S.E. 2d 694.

"Where a city maintains a wharf and charges wharfage for the use thereof, negligence relating thereto, resulting in injury, may create municipal liability. . . . The municipality is bound the same as a private individual to use ordinary care and diligence in keeping the wharf free and safe from obstructons, and is liable in an action at common law for damages done to a vessel, or person on the wharf, by reason of neglect of such duty." McQuillin, Municipal Corporations (2d Ed.), Section 2849, p. 1183, *et seq. Henderson v. Wilmington,* 191 N.C. 279, 132 S.E. 25.

We have cited the above decisions to show that a municipality may in certain instances, be liable in tort even though it may be engaged in a governmental function; and likewise may be held liable when engaged in a proprietary function which is considered such a *public necessity* that its activity is held to be for a *public purpose* and a *necessary governmental expense.*

We held in *Sing v. Charlotte,* 213 N.C. 60, 182 S.E. 693, that an airport is not a necessary governmental expense. It was also held in *Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211, that the expenditure of funds for the construction and maintenance of an airport by the City of Reidsville was for a public purpose. This decision was cited and followed in *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 703, *Cf. Nash v. Tarboro, supra.*

The identical question now before us is one of first impression with us, and in view of the numerous exceptions to the definitions that have been laid down in an effort to define what is a governmental function of a municipality and what is a corporate or proprietary one, we deem it proper to examine the decisions from other jurisdictions bearing on the question under consideration.

The overwhelming weight of authority is to the effect that the construction, operation and maintenance of an airport by a municipality is a proprietary function and that such municipality may be held liable in tort for the negligent operation thereof. *Mayor and City Council v. Crown Cork & Seal Co.* (C.C.A. Fourth Circuit 1941), 122 F. 2d 385; *Peavey v. City of Miami,* 146 Fla. 629, 1 So. 2d 614; *Pignet v. City of Santa Monica,* 29 CA 2d, Cal. 286, 84 P. 2d 166; *City of Blackwell v. Lee,* 178 Okla. 338, 62 P. 2d 1219; *Christopher v. City of El Paso* (Texas Civ. App.), 98 S.W. 2d 394; *Mollencop v. City of Salem,* 139 Ore. 137, 8 P. 2d 783; *Coleman v. City of Oakland,* 110 Cal. (q.) 715, 295 P. 59; *City of Mobile v. Lartigue,* 221 Ala. 36, 127 So. 257; Fixel on The Law of Aviation (3d Ed. 1948), p. 198; Aviation Accident Law by Rhyne (1947), p. 149.

In the case of *Abbott v. Des Moines,* 230 Iowa 494, 298 N.W. 649, 138 A.L.R. 120, the Court held the defendant could not be held liable in tort in connection with the operation of its airport, since the liability of a city or town in connection with the operation of an airport was fixed by statute to be "no greater than that imposed upon municipalities in the maintenance and operation of public parks." And the construction and maintenance of a park by a municipality in that State has been repeatedly held to be purely a governmental function. *Smith v. Iowa City,* 213 Iowa 391, 239 N.W. 29.

In Tennessee the operation and maintenance of an airport has been declared by statute to be "a public governmental function, and no action or suit shall be brought or maintained against any municipality, or its officers, agents, servants or employees, in or about the construction, maintenance, operation, superintendence, or management of any municipal airport." *Stocker v. Nashville,* 174 Tenn. 483, 126 S.W. 2d 339, 124 A.L.R. 345.

In the case of *Mayor, etc. of Savannah v. Lyons,* 54 Ga. App. 661, 189 S.E. 63, the City of Savannah constructed an airport pursuant to special legislative authority, and such airport being repeatedly referred to in the legislative acts as "landing field or park," the Court held the airport was a governmental institution in the nature of a park; and the City could not be held liable for the defective maintenance of a road inside the airport. The Court intimated, however, that if the petition had alleged that the airport was maintained "primarily for pecuniary profit to the

City," the result might have been otherwise, although the city did receive some revenue from the operation of the airport. The Legislature of Georgia passed, in 1933, a uniform airport act, Code Sections 11-201 to 11-209, which provides, among other things: "Any lands acquired, owned, leased, controlled, or occupied by such counties, municipalities, or other political subdivisions for the purpose or purposes enumerated in section 11-201, shall and are hereby declared to be acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes." The fact that this statute declares a municipal airport to be "for public, governmental, and municipal purposes," does not seem to have been considered as controlling on the question of immunity from a tort action.

We have found no decision, and the appellants have cited none, in which any Court of last resort in this country, has held that the construction, operation and maintenance of an airport by a municipality is a governmental function and that municipalities may not be held liable in tort for the negligent operation thereof, except where they have been expressly exempted from such liability by statute.

The interpretation we place on the language of the statute upon which the defendants are relying for immunity, leads to the view that it was the intent of the Legislature to declare that the acquisition, construction, operation and maintenance of an airport by a municipality was a governmental function in the sense that it was a public purpose. Note the language of the statute: "The acquisition, establishment, construction, maintenance . . . and the exercise of any other powers herein granted to municipalities are *declared to be public, governmental and municipal functions exercised for a public purpose* and matters of public necessity."

In the light of our own decisions and the other authorities cited herein, we are of opinion that our General Assembly did not exempt municipalities from tort liability in connection with the ownership and operation of airports by the enactment of G.S. 63-50, and we so hold.

The appellants take the further position that a county in this jurisdiction is empowered only to perform governmental functions and, therefore, cannot act in a proprietary capacity.

The duty to provide by general laws for the organization of cities, towns and incorporated villages is imposed upon the Legislature by our Constitution, Art. VIII, sec. 4, and this Court said, in *Murphy v. Webb,* 156 N.C. 402, 72 S.E. 460: "While in respect to cities and towns it is said that the power of the Legislature to control them, in the exercise of their municipal powers, is somewhat more restricted than in the case of counties, yet both are but instrumentalities of the State, for the administration of local government, and their authority as such may be enlarged, abridged, or withdrawn entirely at the will or pleasure of the Legislature. *Lily v. Taylor,* 88 N.C. 490; *Jones v. Commissioners,* 137

N.C. 592; *Wharton v. Greensboro,* 146 N.C. 356; *Burgin v. Smith,* 151 N.C. 562." *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90.

We fully concur in the view, that a county when acting in its governmental capacity cannot be sued unless express authority to do so has been granted by statute. *Jones v. Commissioners,* 130 N.C. 451, 42 S.E. 144. Ordinarily a county does not undertake to perform functions except in a governmental capacity. But when it undertakes, with legislative sanction, to perform an activity which is proprietary or corporate in character, such a county may be liable in tort to the same extent as a city or town would be if engaged in the same activity. And our statutes authorizing municipalities to construct, operate and maintain airports are made applicable to counties by G.S. 63-57, which reads as follows: "(a) The purposes of this article are specifically declared to be county purposes as well as generally public, governmental and municipal. (b) The powers herein granted to all municipalities are specifically declared to be granted to counties in this state, any other statute to the contrary notwithstanding."

It might be wise to exempt municipalities from tort liability in connection with the construction, operation and maintenance of airports, if so, we think the exemption should be expressly granted by the Legislature, rather than by judicial decree. Airports are here to stay and will be used extensively by the public in the future. However, transportation by air has not been developed to a point so as to make the construction, operation and maintenance of the average airport a profitable enterprise. That is why private capital is not available for this purpose.

But until the General Assembly expressly exempts municipalities from tort liability in connection with the operation of airports, they may be held liable for their negligent operation to the same extent as they are now liable for negligence in connection with the construction, operation and maintenance of light plants, water works, wharves, and other corporate functions. The function of an airport is to maintain facilities for the use of the ships of the air, just as port terminals or wharves are maintained for the use of the ships of the sea.

The third ground upon which the defendants undertook to demur to the complaint invokes the aid of a purported fact which does not appear in the pleadings challenged by the demurrer and is in that respect a "speaking demurrer" and cannot be considered in passing on it. *Sandlin v. Wilmington,* 185 N.C. 257, 116 S.E. 733. It is not alleged in the complaint that J. R. Calton was appointed by the defendants or by their Airport Board as an airport guard with full police powers, or that he was exercising such powers at the time of the death of plaintiff's intestate. However, G.S. 63-53 (b) provides, among other things, that a municipality or municipalities operating an airport are given the author-

ity "to appoint airport guards or police with full police powers." And G.S. 63-58 gives to a municipality or municipalities operating an airport, subject to federal and state laws, rules and regulations, the exclusive jurisdiction and control of such airports and no other municipality "shall have any police jurisdiction of the same."

Whether J. R. Calton was acting in his capacity as a servant or agent of these defendants, as alleged in the complaint, or was acting in the capacity of an "airport guard with full police powers," at the time he shot plaintiff's intestate, is a question of fact to be determined by a jury on an issue raised by proper pleadings. *Tate v. R. R.,* 205 N.C. 51, 169 S. E. 816.

The judgment of the court below, in overruling the demurrer, is Affirmed.