LINDA D. VAUGHN v. COUNTY OF DURHAM, DURHAM COUNTY DEPART-
MENT OF SOCIAL SERVICES, GLADYS JOHNSON AND ANN TIETZ

No. 7714SC28

(Filed 16 November 1977)

**1. Counties § 9— foster care activities—governmental function—governmental immunity**

The placement of children in foster homes by a county department of social services is a governmental, not a proprietary, function, and such activity is protected by the doctrine of governmental immunity. Consequently, that doctrine precluded suit against a county and a county department of social services based on alleged negligence of employees of the department of social services in placing in plaintiff's home a foster child who carried an infectious disease and communicated the disease to plaintiff, thereby necessitating an abortion on the part of the plaintiff.

**2. State § 4— governmental immunity—tort action**

The Court of Appeals is bound by decisions of the Supreme Court that the doctrine of governmental immunity applies in tort actions against the State and its political subdivisions.

APPEAL by plaintiff from *Hobgood, Judge.* Order dismissing plaintiff's complaint entered 12 November 1976 in Superior Court, DURHAM County. Heard in the Court of Appeals 29 September 1977.

Plaintiff filed a complaint alleging that individual defendants Johnson and Tietz were employees of defendants Durham County and Durham County Department of Social Services; that plaintiff and her husband operated a foster home in which the defendants placed children for care; that defendants Johnson and Tietz knew the plaintiff intended to become pregnant in the near future; that defendant Johnson, acting as agent for Durham County and Durham County Department of Social Services, placed James Mason, a four-year-old child in the foster home of plaintiff; that the child was a carrier of cytomegalic inclusion disease, an infectious disease likely to cause birth defects in an unborn fetus if contracted by a pregnant female; that prior to his placement in the plaintiff's foster home, James Mason had been tested regarding cytomegalic inclusion disease, which tests concluded that James Mason was a carrier of the disease; that at the time of the placement, the Durham County Department of Social Services and its agent, Gladys Johnson, knew or in the exercise of due care

and reasonable diligence should have known of the diagnosis of James Mason and the dangers to others from the disease; that at the time of the placement and during the next five months subsequent thereto, no mention of the disease was ever made to the plaintiff by defendant Johnson, defendant Tietz after she replaced Johnson as the caseworker handling the placement of children in the home of the plaintiff, or any other employee of defendants Durham County and Durham County Department of Social Services; that after becoming pregnant the plaintiff contracted cytomegalic inclusion disease, underwent an abortion on the advice of her physician, has suffered greatly from the loss of the unborn child and has required and continues to require psychiatric counseling as a result of the negligence of the defendants.

Individual defendants Johnson and Tietz filed an answer denying negligence and asserting contributory negligence. Defendants Durham County and Durham County Department of Social Services asserted governmental immunity and filed an affidavit to the effect that Durham County had not waived its governmental immunity pursuant to G.S. 153A-435 by purchasing liability insurance. The defendants Durham County and Durham County Department of Social Services filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under North Carolina Rules of Civil Procedure 12(b)(6). Hobgood, Judge, dismissed the complaint of plaintiff against Durham County and Durham County Department of Social Services, ruling that governmental immunity applied to the functions of the Durham County Department of Social Services, that Durham County had not waived its governmental immunity, and that the doctrine of governmental immunity precluded suit by the plaintiff against the governmental entities.

*Powe, Porter, Alphin & Whichard, by Charles R. Holton and Willis P. Whichard, for plaintiff appellant.*

*Thomas R. Odom for defendant appellee Durham County.*

*Lester W. Owen for defendant appellee Durham County Department of Social Services.*

MORRIS, Judge.

[1] The plaintiff appellant's first argument to the Court is that the doctrine of governmental immunity does not apply to the

foster care activities of the Durham County Department of Social Services. The plaintiff points out that governmental immunity does not protect a municipal corporation when it engages in a proprietary function and contends that county foster care activities are proprietary in nature. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897 (1972). The plaintiff calls to the Court's attention cases holding the disposal of garbage and the operation of a county hospital to be proprietary functions and cites authority to the effect that "in cases of doubtful liability application of the rule should be resolved against the municipality." *Koontz v. City of Winston-Salem, supra* at 530; *Sides v. Hospital*, 287 N.C. 14, 213 S.E. 2d 297 (1975). The plaintiff contends that the providing of foster care is a case of doubtful liability and uncertain application of the doctrine, because there is no North Carolina case declaring any activity of a Department of Social Services to be a governmental function. The plaintiff then argues that the trend away from application of the immunity doctrine should be followed and that to grant governmental immunity in a case of first impression would be to expand the doctrine in contravention of a judicial mandate that areas of governmental immunity from suit should be restricted rather than expanded. Despite our sympathy for the plaintiff, we must hold otherwise.

The plaintiff's reasoning is persuasive but fails because the facts do not present a case of doubtful application of the doctrine. When the activity of a governmental entity is clearly governmental in nature, and not proprietary, the rule of sovereign immunity will protect the government from suit. As stated in *Moffitt v. Asheville*:

> ". . . where a city or town in exercising the judicial, discretionary or legislative authority, conferred by its charter, or is discharging a duty, imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers. . . ." *Moffitt v. Asheville*, 103 N.C. 237, 254, 9 S.E. 695, 697 (1885).

The plaintiff appellant contends that this standard is vague and referred to *Sides v. Hospital*, supra, where the Court presented guidelines to determine whether an activity is proprietary or governmental in nature. In *Sides*, the Court noted that in all functions declared to be proprietary in nature, a monetary charge was

made for the service. The Court also declared a second factor to be whether the activity complained of has historically been performed by the government or by private corporations. The activity for which liability is urged in the instant case is the placement of a child in a foster home by the Department of Social Services. Applying the guidelines of *Sides* to the general principle announced in *Moffitt,* it becomes evident that the placement of children by the Department of Social Services is a governmental function entitled to immunity. Contrary to a monetary charge being made for the service, G.S. 108-66 requires the General Assembly to appropriate funds to the Department of Human Resources, to give assistance to needy children by providing foster care under the State Foster Home Fund. There is no routine charge made either for the provisions of foster care or for the service of placing a child in a foster home. The placement service is supported from the general tax revenues collected by the State and county governments. Reasoning from the guideline, the activity complained of by the plaintiff is governmental in nature.

The plaintiff contends that, historically, the provision of foster care has been performed by religious, charitable, or other private institutions. This ignores the North Carolina constitutional and statutory mandate to provide care for those in need. Article XI, § 4 of the North Carolina Constitution entitled Welfare Policy, Board of Public Welfare reads:

> "Beneficent provision for the poor, the unfortunate, and the orphan is one of the first duties of a civilized and Christian state. Therefore, the General Assembly shall provide for and define the duties of a board of public welfare."

Pursuant to this section the General Assembly has directed county departments of social services to administer certain programs for the benefit of children in need of foster care, and the General Assembly has also provided funds for foster care services. *See* G.S. 108-23(5), and G.S. 108-66. It is clear from the above that the Durham County Department of Social Services was "discharging a duty, imposed solely for the benefit of the public. . . ." *Moffitt v. Asheville, supra* at 254.

Plaintiff argues that statutory authorization of an activity is not enough to make the activity governmental and cites *Rhodes*

*v. Asheville*, 230 N.C. 134, 52 S.E. 2d 371 (1949), in which the maintenance of an airport was declared to be a proprietary function despite statutory authorization for the construction and maintenance of a municipal airport. The Court in *Rhodes* did state that statutory authorization is not decisive if the function is otherwise proprietary in nature. The Court did not state, however, that statutory authorization is irrelevant to the question of whether a function is proprietary or governmental. The statutory authorization here is not controlling, but it is significant in light of the funds provided to maintain the programs and the unrebutted fact that no monetary charge is made for the service of placing a child in a foster home. It is the totality of these factors which leads to the conclusion that the function was governmental.

A more general consideration was presented by this Court when we stated that "[t]he underlying test is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit." *McCombs v. City of Asheboro*, 6 N.C. App. 234, 241, 170 S.E. 2d 169, 174 (1969). The placement of, and provision for children in a foster home is certainly "for the common good" pursuant to our constitutional duty to provide for "the poor, the unfortunate, and the orphan". It is also clear that such an activity is without "the element of special corporate benefit, or pecuniary profit" as no money is charged for the provision of such services. *McCombs v. City of Asheboro, supra.* This assignment of error is overruled.

[2] In her second argument, plaintiff contends that this Court should judicially abrogate the doctrine of governmental immunity. This we cannot do. We are bound by the decisions of the Supreme Court of this State, and in *Steelman v. City of New Bern* the Court stated:

". . . It is true that the doctrine was first adopted in North Carolina by this Court. However, this judge-made doctrine is firmly established in our law today, and by legislation has been recognized by the General Assembly as the public policy of the State. See *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 171 S.E. 2d 427 (1969). . . .

The General Assembly has modified the doctrine but has never abolished it. In fact, a bill was introduced in the 1971

General Assembly to abolish governmental immunity in its entirety, but his bill failed to pass.

It may well be that the logic of the doctrine of sovereign immunity is unsound and that the reasons which led to its adoption are not as forceful today as they were when it was adopted. However, despite our sympathy for the plaintiff in this case, we feel that any further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court."

279 N.C. 589, 594-595, 184 S.E. 2d 239, 242-243 (1971).

Since *Steelman*, however, sovereign immunity has been abrogated in breach of contract actions against the State. *Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412 (1976). The decision of the Court contained persuasive reasons for abandoning sovereign immunity in breach of contract actions. Chief Justice Sharp, writing for the Court, was careful to point out, however, that the decision did not apply to actions in tort. As Justice Sharp noted, many authors have listed extensive reasons for the abolition of sovereign immunity in tort, but until the Supreme Court or the General Assembly finds these reasons to be persuasive we are bound by the decision in *Steelman*. This assignment of error is overruled.

Affirmed.

Judges VAUGHN and CLARK concur.