THE STATE OF NORTH CAROLINA EX REL, STATE ART MUSEUM BUILD-ING COMMISSION, PLAINTIFF v. THE TRAVELERS INDEMNITY COM-PANY, DEFENDANT

No. 9210SC408

(Filed 3 August 1993)

**1. Limitations, Repose, and Laches § 5 (NCI4th); State § 2.2 (NCI3d)— building art museum—State acting in governmental capacity—action to recover on performance bond not precluded by statute of limitations**

The State was acting in its governmental capacity in constructing an art museum, even though the Building Commission was authorized to receive private as well as public funds; therefore, time limitations did not apply and did not preclude this suit against defendant surety to recover on a performance

STATE ex rel. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

bond, since the relevant statutes did not expressly include the State.

**Am Jur 2d, Limitation of Actions § 412.**

2. **Principal and Surety § 48 (NCI4th)— obligation on perform-ance bond—contract provision—conditional acceptance of building—obligation not excused**

Neither a provision in the State's contract with the builder nor the State's conditional acceptance of the building project discharged defendant from its obligation on a performance bond, since the contract provision in question meant that, if a performance bond contained any sort of time limitation, that time limitation would be set at twelve months; the perform-ance bond in this case contained no time limitation at all; suing on the bond within twelve months was therefore not a condition precedent; the State's acceptance of the project was made conditional upon the completion of a 50-page punch list; and the fact that another contractor later completed the work did not preclude suit against the general contractor for its default, did not have the effect of rendering the State's acceptance final as to the general contractor, and did not have the effect of discharging the surety of its obligation.

**Am Jur 2d, Contractors' Bonds § 191.**

3. **State § 2.2 (NCI3d); Principal and Surety § 53 (NCI4th)— cost of work not done by contractor—amount of State's retainage—amount paid to replacement contractor—existence of State Art Museum Building Commission—no genuine issues of material fact**

In an action to recover on a performance bond issued by defendant as surety for the general contractor who built the State Art Museum, there were no issues of material fact as to whether the cost of the work left to be completed after the general contractor's default was less than the amount of retainage held by the State, whether the trial court properly assessed against defendant the amount paid to the replacement contractor, and whether the State Art Museum Building Com-mission still existed.

**Am Jur 2d, Contractors' Bonds §§ 222, 223.**

STATE EX REL. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

4. **Principal and Surety § 52 (NCI4th)— liability of surety for interest—surety liable for full amount of judgment against principal**

    Because a surety is liable for the full amount of the judgment against the principal, defendant, which issued a performance bond as surety for the general contractor who built the State Art Museum, should be liable for the full amount of the judgment against the general contractor, including the amount of interest awarded therein.

    **Am Jur 2d, Contractors' Bonds § 226.**

    Judge COZORT concurring in part and dissenting in part.

Appeal by defendant from Judgment entered 25 June 1991 by Judge Narley Cashwell, and by both parties from Judgment entered 17 February 1992 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 29 March 1993.

    *Attorney General Lacy H. Thornburg, by Special Deputy Attorney General T. Buie Costen, and Assistant Attorney General Teresa L. White, for the State.*

    *Burns, Day & Presnell, P.A., by Lacy M. Presnell III, Daniel C. Higgins, and Susan F. Vick, for defendant.*

LEWIS, Judge.

    In December 1989, the State, acting on behalf of the State Art Museum Building Commission (hereafter the "Building Commission" or the "Commission"), instituted this action to recover on a performance bond issued by defendant, the Travelers Indemnity Company (hereafter "Travelers"), as surety for Middlesex Construction Corporation (hereafter "Middlesex"). The State had earlier secured a judgment of $373,603.18 against Middlesex, which judgment remains unpaid. In June 1991 the trial court granted partial summary judgment in favor of the State regarding Travelers' affirmative defenses of the statute of limitations, the statute of repose, laches, and discharge. In February 1992 the trial court entered summary judgment in favor of the State for the full amount of the Middlesex judgment plus interest. Travelers now appeals from both summary judgment orders, and the State appeals from the February 1992 order on the issue of the amount of interest awarded.

STATE EX REL. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

In June 1977 the State contracted with Middlesex to serve as general contractor for the construction of the North Carolina Museum of Art. At that time Middlesex procured a performance bond from Travelers in compliance with the contract instructions to bidders. By July 1981 Middlesex had completed and had been paid for about 99% of the work. However, in November 1981 the State declared Middlesex to be in default due to its failure to complete "punch list" work at the museum. Travelers was notified of the breach, but opted not to take over the remaining work. The State hired another contractor to complete the job.

In March 1982 Middlesex filed suit against the Building Commission for breach of contract, and after dismissals and appeals, again filed suit against the Building Commission in January 1984. Travelers was notified of the lawsuit, but was not made a party to it. In March 1988 the court filed its judgment, which resulted in a net recovery for the Building Commission against Middlesex in the amount of $373,603.18. Middlesex's insolvency and failure to pay the judgment precipitated the present action against Travelers as their surety.

In this appeal we must review two summary judgment orders from the trial court. First, Travelers appeals from the 25 June 1991 order dismissing its affirmative defenses. Second, Travelers and the State both appeal from the 14 February 1992 order awarding the State the amount of the judgment originally entered against Middlesex plus interest. At the outset we note that summary judgment is only appropriate where there are no genuine issues of material fact. N.C.G.S. § 1A-1, Rule 56(c) (1990). After reviewing the various arguments before us, we conclude that in both instances the trial court correctly granted summary judgment for the State. However, we partially reverse the second summary judgment order on the issue of the amount of interest awarded to the State.

I.  Travelers' appeal from Order of 25 June 1991

[1]  In its summary judgment order of 25 June 1991 the trial court dismissed Travelers' affirmative defenses of the statute of limitations, the statute of repose, and laches. Although at the trial level Travelers argued that the State is no longer exempt from the running of time limitations, in oral argument before the Court of Appeals Travelers conceded that the case of *Rowan County Board of Education v. United States Gypsum Co.*, 332 N.C. 1, 418 S.E.2d 648 (1992), is dispositive on this issue. Travelers proceeded

STATE EX REL. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

with its argument that the State's action was proprietary and not governmental, thereby rendering it subject to the time limitations in accordance with *Rowan.*

We begin with a review of *Rowan.* Historically the government has been exempt from the running of various time limitations under the doctrine of *nullum tempus occurrit regi,* or "time does not run against the king." *See Rowan,* 332 N.C. at 6, 418 S.E.2d at 652. However, N.C.G.S. § 1-30 states that "[t]he limitations prescribed by law apply to civil actions brought in the name of the State, or for its benefit, in the same manner as to actions by or for the benefit of private parties." N.C.G.S. § 1-30 (1983). In *Rowan* the Supreme Court clarified the application of the doctrine of *nullum tempus* in light of section 1-30. The Court stated that:

> We now clarify the status of this doctrine in this jurisdiction: *nullum tempus* survives in North Carolina and applies to exempt the State and its political subdivisions from the running of time limitations unless the pertinent statute expressly includes the State.

332 N.C. at 8, 418 S.E.2d at 653. However, *Rowan* maintained a governmental versus proprietary distinction to use in reviewing actions of the State. If the State was acting in a proprietary capacity, the time limitations do apply unless the relevant statute excludes the State. *Id.* at 9, 418 S.E.2d at 654. If the State's action was governmental, the time limitations do not apply unless the applicable statute expressly includes the State. *Id.* Thus, if we determine that the State was acting in its governmental capacity in constructing the art museum, then the time limitations did not apply and did not preclude the present suit against Travelers since the relevant statutes do not expressly include the State. *See* N.C.G.S. § 1-52(1), -(6) (Cum. Supp. 1992) (three year statute of limitations for contract actions and for actions against sureties); N.C.G.S. § 1-50(5)(b)1., -7. (Cum. Supp. 1992) (six year statute of repose for actions to recover for breach of contract to construct an improvement to real property and for actions against sureties).

Generally, the State acts in its governmental capacity when it is "promoting or protecting the health, safety, security or general welfare of its citizens." *Rhodes v. Asheville,* 230 N.C. 134, 137, 52 S.E.2d 371, 373 (1949). A court may also consider whether or not the State's action is for the "common good of all" and therefore governmental, or for pecuniary profit and therefore proprietary.

STATE EX REL. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

*Vaughn v. County of Durham,* 34 N.C. App. 416, 420, 240 S.E.2d 456, 459 (1977), *disc. rev. denied,* 294 N.C. 188, 241 S.E.2d 522 (1978) (citation omitted).

The Legislature established the Art Museum Building Commission and authorized it to receive public as well as private funds towards the cost of building the museum. N.C.G.S. § 143B-58 (1990). The State points out that the General Assembly appropriated a total of over ten million dollars for the construction of the art museum. Travelers, however, relies on the fact that the Commission was authorized to receive private funds in its argument that the State was acting in its proprietary capacity.

We hold that the mere receipt of private funds does not render the State's actions proprietary, especially in light of the large appropriation of public funds in this case. A lawsuit to recover lost public funds is consistent with a governmental purpose. In *Rowan* the Court concluded that the Board of Education "was acting in a governmental capacity when it brought suit to recover lost tax money expended in the construction of public schools . . . ." 332 N.C. at 16, 418 S.E.2d at 658. Similarly, we hold that the State was acting in its governmental capacity in suing to recover tax money lost in the construction of the art museum. Although the establishment and maintenance of the public schools in *Rowan* was obviously a governmental task, we believe the establishment of an art museum is also governmental in purpose. We note that the art museum is open for the education and enjoyment of the general public. The State's interest in providing cultural resources and educational opportunities renders the creation of an art museum a governmental function. "Life without industry is guilt and industry without art is brutality." John Ruskin, *Lectures on Art 3, The Relation of Art to Morals* (Feb. 23, 1870).

Because we find the State's action in building the art museum was governmental, and because the applicable time limitations do not expressly include the State, we hold the doctrine of *nullum tempus* is applicable. The trial court properly granted summary judgment to the State on Travelers' affirmative defenses.

II.  Appeal from Judgment of 14 February 1992

A.  Travelers' appeal

[2]  Travelers also appeals from the summary judgment order of 14 February 1992, claiming that it was discharged and that ques-

STATE EX REL. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

tions of material fact existed to preclude summary judgment. Travelers argues it was discharged because of the time limitation found in the contract itself and because the State had actually accepted the project from Middlesex.

Travelers argues the State failed to bring the present action within the time period set forth in the contract. Article 28 of the "General Conditions of the Contract," entitled "Performance Bond," stipulates that "[i]n all bonds, the provision that no suit, action, or proceedings by reason of any default whatsoever shall be brought on this bond after so many months shall be fixed at twelve (12) months." According to Travelers, instituting an action within 12 months of default was a condition precedent to the suit itself. Thus, the State's failure to sue within 12 months of Middlesex's 1981 default discharged Travelers' obligation on the bond.

We agree with the State that the provision does not apply to this case. We interpret the provision to mean that if a performance bond contains any sort of time limitation, that time limitation will be set at 12 months. However, the performance bond in this case contains no time limitation at all. Suing on the bond within 12 months was therefore not a condition precedent.

Travelers also argues it was discharged because the State had accepted the project from Middlesex. In the 1988 Judgment against Middlesex the court found that the State " 'accepted' the building subject to completion of 'punch list' work to be specified. This 'acceptance' was only a conditional acceptance." Travelers argues the condition became satisfied when the replacement contractor finished the punch list work, and the State's acceptance thereby became final.

The State emphasizes that its acceptance was made conditional upon the completion of a 50-page list of "punch work" items. The fact that another contractor later completed the work did not preclude suit against Middlesex for its default, did not have the effect of rendering the State's acceptance final as to Middlesex, nor did it have the effect of discharging the surety of its obligation. Furthermore, as the State points out, Travelers' responsibility related to the entire contract, not just the punch list work, and the judgment against Middlesex included damages for various other items. We conclude that neither the provision in the contract nor the State's conditional acceptance of the project discharged Travelers from its obligations.

STATE EX REL. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

[3] Travelers also argues summary judgment was inappropriate in this case because there are issues of material fact to be resolved. Travelers claims that genuine issues exist over whether the cost of the work left to be completed after Middlesex's default was less than the amount of retainage held by the State. Other issues, according to Travelers, are whether the various damages awarded against Middlesex were properly assessed against Travelers, and whether the Art Museum Building Commission exists.

Travelers points out that it actually cost the State less to complete the punch list work than the amount of retainage it withheld. Thus, Travelers claims it has no liability under the performance bond because the State was not damaged by the default.

According to the contract, upon default the contractor and the surety become responsible for "[a]ll costs and charges incurred by the Owner, together with the costs of completing the work under the contract . . . ." Thus, notwithstanding the actual cost of completing the punch list work, if all the costs and expenses together exceeded the amount of the retainage, the State could properly recover the excess cost from Middlesex and Travelers. The State points out that the trial court allowed Middlesex credit for the amount of retainage in computing the damages awarded. The amount of the judgment represents excess costs associated with remedial contract costs, faulty work, and liquidated damages. We find no genuine issues of material fact regarding the amount of the judgment rendered against Middlesex and charged to Travelers.

Travelers claims genuine issues exist regarding the assessment of the damages against Travelers, specifically regarding the amount paid to the replacement contractor. We find this contention meritless. As stated above, the contract stipulates that Travelers, as surety, is responsible for all costs incurred due to Middlesex's default. "The obligation of the surety is ordinarily measured by the obligation of the principle." *Colonial Acceptance Corp. v. North-eastern Printcrafters, Inc.*, 75 N.C. App. 177, 179, 330 S.E.2d 76, 77 (1985). We note that the court carefully itemized its judgment against Middlesex, crediting Middlesex for any sums it was due, and only charging against it costs incurred as a result of its default. Travelers is clearly liable for the full amount of the Middlesex judgment.

STATE ex rel. ART MUSEUM BLDG. COMM. v. TRAVELERS INDEM. CO.

[111 N.C. App. 330 (1993)]

Finally, Travelers claims genuine issues exist as to whether the State Art Museum Building Commission is still a viable entity. Travelers claims the Commission was terminated according to N.C.G.S. § 143B-61.1 (1990), which provides that the Commission expires when it submits its final report. Travelers concedes that the Commission has not submitted a final report, but argues that its failure to meet regularly over the past ten years has somehow satisfied the requirement of filing a final report.

Section 143B-61.1 states that the Building Commission expires when it makes its final report, and that it must make such final report "120 days after the final resolution of all cases or claims in which the Commission is a party or that are brought under G.S. § 143-135.3 regarding the State Art Museum." According to this statute, the Commission may not submit its final report until the resolution of the present action. Even comatose, the Building Commission exists.

B. The State's Appeal

[4] The State argues that the trial court erred in awarding interest on the Middlesex judgment only from 28 December 1989, the date this action was filed, instead of from 28 March 1988, the date of the filing of the final judgment against Middlesex. The State points out that the judgment against Middlesex stipulated that the State was entitled to "interest at the rate provided by law from the date of filing of this judgment until paid." According to the State, as surety Travelers should be held liable for the full amount of the judgment against Middlesex, including the amount of interest awarded therein. See Martin v. Hartford, 68 N.C. App. 534, 537, 316 S.E.2d 126, 128, disc. rev. denied, 311 N.C. 760, 321 S.E.2d 140 (1984) (surety's liability same as principal's as long as does not exceed amount of bond).

Travelers, on the other hand, emphasizes that the State elected not to sue Travelers when it brought suit against Middlesex. No claim was asserted against Travelers until the filing of this action in December 1989. Travelers contends that saddling it with interest which had accrued before it was even sued would amount to an award of pre-filing interest.

A judgment entered against a principal is conclusive and binding upon the surety even though the surety was sued separately from the principal. George v. Hartford Accident and Indemnity

Co., 102 N.C. App. 761, 765-66, 404 S.E.2d 1, 3 (1991), *modified and aff'd*, 330 N.C. 755, 412 S.E.2d 43 (1992) (citation omitted). The following passage further explains this situation:

> Where the very condition of the bond is the performance of a judgment against the principal, or that the surety will pay all damages that may be awarded in an action brought against the principal, or will answer for the principal in respect to some charge which the law lays on him, there is no question as to the conclusiveness, as against the surety, of a judgment against the principal, if binding upon the latter and free from fraud and collusion, assuming, of course, that it is the kind of judgment contemplated by the surety's undertaking.

102 N.C. App. at 766, 404 S.E.2d at 3 (quoting 74 Am. Jur. 2d *Suretyship* § 153 (1974)). Because a surety is liable for the full amount of the judgment against the principal, we hold that Travelers should be liable for the full amount of the judgment, which included interest from the date of the judgment, 28 March 1988. For this reason, we must reverse that portion of the judgment allowing interest only from December 1989.

In conclusion, we affirm the summary judgment order of 25 June 1991 dismissing Travelers' affirmative defenses, and we affirm the 17 February 1992 summary judgment order on all issues except the amount of interest awarded. On that issue we reverse and remand to the trial court for entry of judgment in accordance with this opinion.

Affirmed in part, reversed in part and remanded.

Judge EAGLES concurs.

Judge COZORT concurs in part and dissents in part.

Judge COZORT concurring in part and dissenting in part.

I concur with all of the majority opinion except that portion which reverses the trial court's decision to award interest from 28 December 1989 instead of from 28 March 1988. I believe the trial court was correct on the issue of interest, and I vote to affirm that portion of the judgment as well. For that reason, I respectfully dissent, in part.