CARL M. WIGGINS AND CLARA P. WIGGINS v. THE CITY OF MONROE, A
MUNICIPAL CORPORATION, AND JOHNNIE H. ROLLINS, JR.

No. 8620SC756

(Filed 7 April 1987)

**Municipal Corporations § 10— demolition of dwelling—liability of building inspector and city**

    Plaintiffs' evidence was sufficient for the jury to find that defendant chief
building inspector's demolition of plaintiffs' apartment house was malicious or
outside and beyond the scope of his duties and that the building inspector and
defendant city were thus liable for the building inspector's actions where it
tended to show that the inspector directed plaintiffs by letter to repair their
house within ten days, signed a building permit authorizing them to begin
repairs, and then demolished the house after plaintiffs had begun timely
repairs.

APPEAL by plaintiffs from *Walker, Judge.* Judgment entered
19 February 1986 in Superior Court, UNION County. Heard in the
Court of Appeals 17 December 1986.

This case has been on appeal to this Court before. *See Wiggins v. City of Monroe*, 73 N.C. App. 44, 326 S.E. 2d 39 (1985).

This is a civil action instituted by plaintiffs, Carl W. Wiggins
and Clara P. Wiggins on 19 November 1981, naming as defendants, the City of Monroe and the chief building inspector for the
City of Monroe, Mr. Johnnie H. Rollins, Jr.

Plaintiffs' complaint stated two claims for relief: (1) that as a
direct and proximate result of the City of Monroe's trespass and
demolition of plaintiffs' four unit apartment project plaintiffs
were damaged in the amount of $35,000.00, (2) that "Defendant
Rollins willfully, wantonly and maliciously ordered, supervised,
and participated in the demolition of the Property of the Plaintiffs despite the obvious commencement of repairs within time
limits set forth and the presence of materials for on-going
repairs."

On 25 January 1982, defendants, pursuant to Rule 12(b)(6),
N.C. Rules Civ. P., filed a motion to dismiss and also filed their
answer denying liability for the demolition of plaintiffs' property.
Defendants, in their answer: (1) pled as a bar to plaintiffs' right of
recovery that the operation of a building inspection department

by the defendant, City of Monroe, is a governmental function and the cause or causes of action alleged in the complaint, if any, are within the City's governmental immunity which has not been waived, (2) admitted that defendant Rollins signed a building inspection clearance and supervised the demolition of plaintiffs' improvements, and (3) denied plaintiffs' allegations that defendant Rollins wilfully, wantonly and maliciously supervised the demolition of plaintiffs' improvements despite the obvious commencement of repairs. As a further answer and counterclaim defendants alleged that plaintiffs owed the City of Monroe $781.15 for costs incurred in the demolition of "plaintiffs' house."

On 28 June 1982, plaintiffs filed a motion to strike certain allegations of defendants' further answer and counterclaim. On 4 August 1982, the trial court denied plaintiffs' motion to strike.

Plaintiffs, on 2 September 1982, filed a reply to defendants' further answer and counterclaim. On 22 November 1982, defendants filed a motion for summary judgment, affidavits of defendant Rollins and James E. Hinkel, along with a certified copy of sections of the Monroe City Code that pertained to minimum housing standards. On 6 December 1982 and 17 December 1982 plaintiffs filed affidavits by plaintiff, Carl Wiggins.

On 1 November 1983, the trial court granted defendants' motion for summary judgment on both claims for relief alleged in plaintiffs' complaint. Plaintiffs appealed from the trial court's judgment to this Court.

This Court, after reviewing the Wigginses' allegations in their pleadings and their forecast of evidence, concluded that the trial court erroneously granted summary judgment in favor of defendants. *Wiggins v. City of Monroe*, 73 N.C. App. 44, 326 S.E. 2d 39 (1985).

This case was heard by jury during the 17 February 1986 superior court jury civil term for Union County. Defendants moved the court for a directed verdict at the close of plaintiffs' evidence. The trial court deferred ruling on defendants' motion until the close of all of the evidence. At the close of all of the evidence, defendants renewed their motion for a directed verdict. The trial court granted defendants' motion for a directed verdict. Plaintiffs appeal.

*DeArmon, Burris, Martin, Bryant, McPhail & Troy, by Christian R. Troy, for plaintiff appellants.*

*Love & Milliken, by John R. Milliken and Wade and Carmichael, by J. J. Wade, Jr., for defendant appellees.*

JOHNSON, Judge.

Plaintiffs assign error to the trial court's ruling on defendants' motions for directed verdicts. The dispositive issue presented to us is whether as a matter of law the evidence offered by plaintiffs, when considered in the light most favorable to plaintiffs, is sufficient to be submitted to the jury. *See Roberts v. William N. & Kate B. Reynolds Memorial Park,* 281 N.C. 48, 187 S.E. 2d 721 (1972). If so, the trial court erred and plaintiffs are entitled to a new trial. We hold that the evidence, even when viewed in the light most favorable to plaintiffs, was sufficient to submit the case to the jury.

In *Wiggins I* this Court reversed the trial court's ruling on defendants' motion for summary judgment. This Court's conclusion in *Wiggins I* that there was a material issue of fact was, in part, based on the following:

> After reviewing the Wigginses' allegations in their pleadings and their forecast of evidence, we conclude that Rollins' motion for summary judgment was improperly granted. First, the Wigginses alleged in their Complaint that Rollins 'wilfully, wantonly and maliciously ordered, supervised, and participated in the demolition of the property of the plaintiffs despite the obvious commencement of repairs. . . .' *Second, the Wigginses' affidavits support their allegations—that Rollins directed them to repair the house within ten days, signed a building permit authorizing them to begin repairs, and then demolished the house after they had begun timely repairs.* The affidavits tend to show that Rollins' behavior was corrupt or malicious or that he acted outside of and beyond the scope of his duties. Therefore, Rollins, on these facts, is not immune from liability.

*Wiggins I, supra,* at 49, 326 S.E. 2d at 43 (emphasis supplied).

In the case *sub judice,* the trial court ruled upon defendants' motions for directed verdicts as follows:

It is also obvious that what the Court of Appeals had before it, that is, the allegations in this complaint signed by one of the lawyers in your law firm, not signed by Mr. Wiggins, and the affidavits that were prepared for Mr. Wiggins' signature at the time of the hearing on summary judgment forecast a much different case than has been presented in this courtroom. Those affidavits are at best a gross fabrication and exaggeration of what occurred out there. They are at worst perjurious, in my opinion. I have carefully listened to the evidence in this case and thought through the legal points that were raised by these motions. It is my considered opinion that at most what the plaintiff has shown in this case is a negligent exercise of the judgment, which was incident to and part of the public officials duties, that is, the defendant, Mr. Rollins' duties as Chief Building Inspector. The common law is clear that there is no liability upon a public official or upon a public governmental body. That, if anything, again he perhaps was simply negligent in this assessment and exercise of that judgment as to whether or not repairs had been commenced, based on the evidence that he had before him at the time he ordered the demolition of this building. There is immunity both for Mr. Rollins and for the City of Monroe for mere negligence. That is all that you have shown if you have shown anything. The court at this time allows the motion for directed verdicts in favor of the defendants, Mr. Rollins and the City of Monroe.

We do not agree with the trial court's evaluation of the evidence presented at trial. The most significant aspects of plaintiffs' affidavits in support of their allegations, as noted by this Court in *Wiggins I*, are the assertions that "Rollins directed them to repair the house and then demolished the house after they had begun timely repairs." 73 N.C. App. at 49, 326 S.E. 2d at 43. This forecast of the evidence was held by this Court to be sufficient to establish that "[t]herefore, Rollins, on these facts, is not immune from liability." *Id.*

At trial plaintiffs introduced the following letter into evidence:

Wiggins v. City of Monroe

EXHIBIT A

LETTER — CITY OF MONROE, NORTH CAROLINA — March 24, 1981

Mr. Carl Wiggins
408 Roosevelt Blvd.
Monroe, N.C. 28110

Re: 300 Charles Street
    Monroe, N.C. 28110

    Building Inspectors Finding of Fact and Order Dated
    April 17, 1980
    City of Monroe's Ordinance dated May 20, 1980

Dear Mr. Wiggins:

This letter is to inform you that you have 10 days to begin repairs on the structure located at 300 Charles Street; all such repairs are to be completed within 60 days from the date of this letter.

Should you fail to commence repairs within 10 days from the date of this letter and/or complete repairs within 60 days from the date of this letter, the City will demolish the structure and the cost therefore will be billed to you. If you fail to pay the demolition cost, a lien for the cost thereof will be filed against said property.

Your immediate attention to this matter is a must.

Sincerely,

s/JOHNNIE H. ROLLINS, JR.
Chief Building Inspector

---

This letter by Rollins to plaintiffs establishes that if plaintiffs began repairs within ten days from the date of the letter, then Rollins was not authorized to demolish the structure unless plaintiffs did not complete repairs within sixty days from the date of the letter, 24 March 1981. Plaintiffs' evidence established that on Monday, 6 April 1981, Rollins personally authorized and participated in the demolition of the structure at 300 Charles Street.

Plaintiff, Carl Wiggins, testified that on 2 April 1981, the ninth day from the date of the letter he obtained an authorization signed by Rollins which allowed him to purchase a building permit placard and to commence repairs. The authorization states that the work proposed by Rollins was acceptable. Plaintiff also testified that on 2 April 1981, he secured a placard, put it on the structure, assembled a work crew of three people, carried the workers and equipment to the structure at 300 Charles Street and directed the workers as to what to do and the procedures by which to do it. Plaintiff further testified that he had a conversation with Rollins on 2 April 1987, as follows:

Q. And you talked to Mr. Rollins that day, did you?

A. That's correct.

Q. What was the nature of the conversation that you had with Mr. Rollins?

A. I told him [Rollins] that I was buying the permit within the time frame of his letter and that the construction would be completed likewise.

Plaintiff, Carl Wiggins, also testified that he and other workers had begun repairs prior to the expiration of the ten day period set forth in the letter from Rollins. Plaintiffs also introduced photographs which they contend show that repairs were underway prior to the property being demolished.

Plaintiff Carl Wiggins' testimony was corroborated by other witnesses who testified that repairs were commenced during the week preceding the demolition of the structure. Therefore, we hold that the evidence when viewed in the light most favorable to plaintiff tends to show that Rollins' behavior was malicious or outside of and beyond the scope of his duties. And the motion for directed verdict should have been denied. The jury should be allowed to weigh the evidence and judge the credibility of the witnesses.

Consistent with our decision in *Wiggins I* at 51, 326 S.E. 2d at 44, we hold that since plaintiffs' evidence tends to show that Rollins is not immune from liability and was sufficient to withstand Rollins' motion for a directed verdict, it was also error for the trial court to grant the City of Monroe's motion for a directed verdict.

For reasons stated the trial court's order directing verdicts in favor of defendants must be reversed. In light of our decision we need not address plaintiffs' remaining Assignment of Error.

Reversed.

Chief Judge HEDRICK and Judge GREENE concur.