J. D. ROBINETTE, PLAINTIFF v. WILLIAM G. BARRIGER, W. MALCOLM BLALOCK AND ALEXANDER COUNTY, DEFENDANTS

No. 9322SC387

(Filed 6 September 1994)

**1.  Health § 2 (NCI4th); State § 38 (NCI4th)— health department as state agency—action against health department— jurisdiction in Industrial Commission**

The Alexander County Health Department was a state agency rather than a county agency, and defendant health department employee was an agent of the State; therefore, this action alleging damages to plaintiff because of delays in the permitting process in connection with plaintiff's efforts to develop property in the county should have been filed with the Industrial Commission which has exclusive jurisdiction of negligence actions against the State.

**Am Jur 2d, Health §§ 1-18; Municipal, County, School, and State Tort Liability §§ 649 et seq.**

2. **State § 31 (NCI4th)— public official—conduct not shown to be malicious, wanton, and reckless**

In an action to recover damages allegedly suffered by plaintiff by delays in the permitting process in connection with plaintiff's efforts to develop property in Alexander County, the trial court did not err in failing to find that defendant DEHNR's employee's conduct in holding meetings and revoking improvement permits was malicious, wanton, and reckless.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 137 et seq.**

3. **State § 23 (NCI4th)— allegations against government employee—sovereign immunity applicable**

Where plaintiff's allegations of negligence against one defendant related directly to his official duties as the Alexander County Environmental Health Supervisor for the Health Department, that defendant was entitled to immunity under the doctrine of sovereign immunity.

**Am Jur 2d, Municipal, County, School, and State Tort Liability § 70; States, Territories, and Dependencies §§ 104 et seq.**

Judge GREENE concurring in part and dissenting in part.

Appeal by plaintiff and by defendant Barriger from order entered 17 March 1992 by Judge Preston Cornelius and judgment entered 5 November 1992 by Judge William H. Helms in Alexander County Superior Court. Heard in the Court of Appeals 2 February 1994.

*Michael B. Brough & Associates, by Michael B. Brough, for plaintiff appellant-appellee.*

*Womble Carlyle Sandridge & Rice by Allan R. Gitter and James R. Morgan, Jr., for defendant appellant Barriger and defendant appellee Alexander County.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Mabel Y. Bullock, for defendant appellee Blalock.*

COZORT, Judge.

In this case plaintiff sued Alexander County and three government employees, alleging he was damaged by delays in the permitting

process in connection with plaintiff's efforts to develop property in the County. The trial court granted summary judgment for the County and one employee, found no liability as to a second employee, and found the third employee liable to plaintiff for damages of $660,368.00. We reverse the award of damages as to the third employee, finding governmental immunity, and affirm the remainder of the trial court's rulings.

In September of 1988, plaintiff J.D. Robinette began examining tracts of land in Alexander County suitable for construction of a residential subdivision. Plaintiff obtained an option in October of 1988 on a 9.24-acre tract of land on which he intended to develop a ten-lot, lakeside subdivision called "Candlewick Cove." Plaintiff, through his real estate agent, requested that the Alexander County Health Department (Health Department) conduct a site evaluation of the property to determine whether the area was suitable for the installation of septic tanks. On 4 November 1988, defendant Susan Hughes, a sanitarian employed by the Health Department, conducted a preliminary site evaluation. She informed plaintiff both orally and in writing that the site was provisionally suitable for septic tanks. She did explain that drainfields would have to be placed in the rear of the proposed lots, because the front of the lots would need to be filled to accommodate the proposed development scheme. Plaintiff purchased the property on 21 November 1988 for $152,531.50.

On 3 January 1989, plaintiff sent Ms. Hughes a contour map showing the site "as is" and a copy of a grading plan for the proposed subdivision. The grading plan divided the property into ten lots. An attached cover letter acknowledged that plaintiff would locate the septic tanks and drainfields in the rear of the lots. On 6 January 1989, plaintiff, along with his engineer and contractor, met at the property with Ms. Hughes and her supervisor, defendant William G. Barriger, the Alexander County Environmental Health Supervisor. Plaintiff marked the areas on the plots where the septic tanks were to be located and received Mr. Barriger's approval for the installation of septic tanks if the designated areas remained undisturbed. Plaintiff's engineer drew up a plat map marking the areas Mr. Barriger and plaintiff had agreed upon, and the map was mailed to the Health Department. Both Mr. Barriger and Ms. Hughes approved the map, and Mr. Barriger assured plaintiff in a telephone conversation that so long as the areas remained undisturbed, the lots would be acceptable for development with conventional septic tank systems.

ROBINETTE v. BARRIGER

[116 N.C. App. 197 (1994)]

On 9 May 1989, plaintiff recorded a final plat of the Candlewick Cove subdivision and shortly thereafter contacted defendant Barriger to obtain a written certification that the lots were suitable for septic tanks. On 21 June 1989, plaintiff and Mr. Barriger went to the property with Al Slagle, a soil specialist employed by the North Carolina Department of Environment, Health, and Natural Resources (DEHNR). Mr. Slagle extracted soil samples and, upon examination of the soil, concluded that most of the lots were not suitable for development with conventional septic tank systems because the suitable soils were not of sufficient depth.

On 23 June 1989, Mr. Barriger met with Romey Baxley, a District Sanitarian for the State. Mr. Baxley reviewed Mr. Slagle's soil figures and stated the improvement permits could be issued for nine of the ten lots if a prefabricated, permeable block panel system (PPBP) was used. Mr. Baxley reminded Mr. Barriger that, because Mr. Slagle's data showed the depth of suitable soils on many of the proposed lots was inadequate to meet state requirements for a conventional septic system, permits for the systems he recommended could be issued only in accordance with N.C. Admin. Code tit. 10, r. 10A .1950(b) and .1948(c). Subsection .1950(b) requires certain levels of fill dirt to comply with state regulations. Subsection .1948(c) requires certain "substantiating data" before improvement permits are issued.

Sometime between 21 July and 27 July 1989, Mr. Barriger prepared the improvement permits without complying with the above regulation subsections. Mr. Barriger stated he believed the substantiating data and areal fill information did not need to be attached to the permits; he stated he also knew that permits were often amended. Following the issuance of the permits, defendant Malcolm Blalock, Assistant Chief of Environmental Health Services at DEHNR, reviewed the nine permits because Mr. Slagle and Mr. Baxley disagreed over whether the permits were properly issued. Mr. Slagle had rendered his opinion that the soil was inadequate under state regulations to accommodate the septic systems, while Mr. Baxley had indicated the area could be adapted to install the PPBP systems.

Mr. Blalock called a meeting on 25 September 1989 to discuss the disagreement over the permits. The meeting confirmed the dispute as to whether the permits should have been issued for Candlewick Cove. Mr. Blalock understood there was no dispute as to Mr. Slagle's figures or as to whether the permits *could* be issued for the lots. On 25 October 1989, without explanation, Mr. Blalock asked plaintiff for permis-

sion to enter the property to re-evaluate all of the lots. Plaintiff denied Mr. Blalock's request, explaining he had permits for nine of the lots that were valid for three years.

A week later, on 1 November 1989, Mr. Barriger, Mr. Blalock, Mr. Baxley and others attended a meeting at the Health Department to again review the permits. The participants concluded that the permits were defective. On 29 November 1989, Mr. Blalock wrote a letter to defendant Barriger stating that the improvement permits for lots 2, 3, 4, 5, 8, 9, and 10 were to be revoked. The basis for the revocations was the failure to show adequate fill, pursuant to N.C. Admin. Code tit. 10, r. 10A.1950(b), and the issuance of the permits for use of PPBP systems without the substantiating data required by N.C. Admin. Code tit. 10, r. 10A.1948(c). On 30 November 1989, Mr. Barriger signed and delivered a permit revocation letter to plaintiff. In response, plaintiff filed in the Office of Administrative Hearings (OAH) a contested case challenging the validity of the permit revocations.

On 1 January 1990, various amendments to the State Sanitary Sewage Collection, Treatment, and Disposal Rules became effective. Plaintiff filed new improvement permit applications under the amended rules on 8 January 1990. The lots were re-examined by Mr. Slagle. The results coincided with his findings from the evaluation conducted in June of 1989. By 2 April 1990, permits had been reissued for all but one of the lots. Plaintiff later withdrew his contested case in the OAH.

Plaintiff filed this action on or about 4 November 1991 to recover damages allegedly resulting from the misinformation as to the suitability of the lots in the development and the prolonged process necessary to receive development permits. Plaintiff claimed the delay disrupted the progress of the development. He requested $660,368.00 in damages.

Defendant Alexander County (County) filed a motion to dismiss and a motion for summary judgment on 9 December 1991. Defendant Susan Hughes filed a motion for summary judgment on 13 December 1991. Defendant William G. Barriger moved for summary judgment on 28 February 1992. The trial court entered an order on 17 March 1992 granting summary judgment as to defendant County and Susan Hughes, and denying summary judgment as to defendant William Barriger. (Summary judgment for Ms. Hughes is not raised in this appeal.) Defendant Malcolm Blalock moved for summary judgment on 3 April 1992; the trial court denied the motion on 16 June 1992. In

a judgment entered 5 November 1992, the trial court found no liability as to defendant Blalock. As to defendant Barriger, the court found him liable to plaintiff for $660,368.00 in damages. Plaintiff and defendant Barriger appeal.

Plaintiff brings forth two issues on appeal: (1) whether the trial court erred in granting defendant County's motion for summary judgment, and (2) whether the trial court erred in concluding that defendant Blalock's conduct was not malicious, wanton, and reckless. First, plaintiff argues the trial court erred in entering summary judgment in the County's favor. The County argued below that summary judgment was warranted because the trial court lacked subject matter jurisdiction, and the action was barred by governmental immunity. We hold the trial court indeed lacked subject matter jurisdiction and affirm summary judgment in favor of the County.

[1] Plaintiff argues that in granting summary judgment for the County, the trial court incorrectly concluded the County was acting as an agent of the State, holding that the action therefore should have been brought before the North Carolina Industrial Commission, which has exclusive jurisdiction for claims filed under N.C. Gen. Stat. § 143-291, the Tort Claims Act. Plaintiff asserts that the Health Department is a county agency, not a state agency, and that defendant Barriger was a county employee whose actions could be imputed to the County. We find plaintiff's argument unpersuasive.

In *EEE-ZZZ Lay Drain Co. v. N.C. Dep't of Human Resources*, 108 N.C. App. 24, 28, 422 S.E.2d 338, 341 (1992), this Court held that local health departments "are agents of the State," and that therefore, "the Transylvania County Health Department is, like DEHNR, immune from suit." As in *EEE-ZZZ Lay Drain*, the Alexander County Health Department is a state agency, rather than a county agency, and it follows that defendant Barriger was an agent of the State. Accordingly, the action should have been filed with the Industrial Commission, which has exclusive jurisdiction of negligence actions against the State. *See Vaughn v. North Carolina Dep't of Human Resources*, 296 N.C. 683, 252 S.E.2d 792 (1979). The trial court thus did not err in granting summary judgment for the County based on a lack of subject matter jurisdiction.

[2] Next, plaintiff claims the trial court erred in failing to find that defendant Blalock's conduct was malicious, wanton, and reckless. Plaintiff contends that to prove Mr. Blalock's conduct was malicious, plaintiff must only show defendant Blalock acted wrongly and with a

ROBINETTE v. BARRIGER

[116 N.C. App. 197 (1994)]

reckless indifference to the harmful consequences of his actions. We disagree. A public official acts with malice when he or she "wantonly does that which a [person] of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). In the present case, the record is lacking of evidence sufficient to meet the requisite element of intent to find that Blalock acted maliciously. Accordingly, we conclude the trial court did not err when it refused to find that defendant Blalock's actions were malicious, wanton, and reckless.

[3] We now turn to defendant Barriger's appeal. Defendant Barriger contends the trial court erred in denying his motion for summary judgment on the basis of sovereign immunity. We agree.

A public officer is shielded from tort liability by sovereign or governmental immunity when the public officer is acting in his or her capacity as a public officer. *See, e.g., Robinson v. Nash County*, 43 N.C. App. 33, 257 S.E.2d 679 (1979). Where a public officer's negligence is related solely to his or her official duties, a suit must be brought against the officer in his or her "official capacity," rather than in his "individual capacity." *See Stancill v. City of Washington*, 29 N.C. App. 707, 225 S.E.2d 834 (1976).

In the case below, plaintiff attempts to sue defendant Barriger in his individual capacity so that governmental immunity would not apply. A careful examination of the complaint reveals that plaintiff's allegations of negligence against defendant Barriger relate directly to his official duties as a sanitarian. Recently in *Whitaker v. Clark*, 109 N.C. App. 379, 427 S.E.2d 142 (1993), this Court held that the plaintiff failed to state a claim against the defendants individually where the allegations in the complaint pertained only to the defendants' actions in exercise of their official duties. In determining the defendants were entitled to governmental immunity protection, this Court explained:

> Plaintiff urges us to find that she has sued defendants as individuals, yet after careful review of the complaint, we find that she has asserted claims against defendants in an official capacity alone. Absent any allegations in the complaint separate and apart from official duties which would hold a nonofficial liable for negligence, the complaint cannot be found to sufficiently state a claim against defendants individually.

*Id.* at 383-84, 427 S.E.2d at 145. *See also, Dickens v. Thorne*, 110 N.C. App. 39, 429 S.E.2d 176 (1993).

ROBINETTE v. BARRIGER

[116 N.C. App. 197 (1994)]

Because the crux of plaintiff's action in this case is composed of allegations brought against defendant Barriger in his official capacity, rather than as an individual, the doctrine of governmental immunity applies. Defendant Barriger was the Alexander County Environmental Health Supervisor for the Health Department, and under our previous analysis of *EEE-ZZZ Lay Drain*, we conclude defendant Barriger was entitled to immunity as to plaintiff's tort claims. As a result, we reverse the trial court's denial of defendant Barriger's motion for summary judgment, and remand for an entry of summary judgment in Barriger's favor.

In summary, the trial court (1) correctly granted summary judgment for the County, (2) correctly found no liability against Mr. Blalock, and (3) erred by not granting summary judgment for Mr. Barriger.

Affirmed in part, reversed in part, and remanded.

Judge ORR concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

I agree with the majority that the trial court correctly granted summary judgment for the County on the basis of sovereign immunity and found no liability as to defendant Blalock. I disagree, however, that the trial court erred in denying summary judgment as to defendant Barriger and would therefore affirm the trial court's decision in its entirety.

Although Barriger, as a public official performing governmental duties involving the exercise of judgment and discretion, is "immune from liability for 'mere negligence' in the performance of those duties," he is "not shielded from liability if his alleged actions were 'corrupt or malicious' or if 'he acted outside of and beyond the scope of his duties'." *Wiggins v. City of Monroe*, 73 N.C. App. 44, 49, 326 S.E.2d 39, 43 (1985) (citations omitted), *appeal after remand*, 85 N.C. App. 237, 354 S.E.2d 365, *cert. denied*, 320 N.C. 178, 358 S.E.2d 72 (1987). If a plaintiff alleges that a public official is corrupt, malicious, or acted beyond the scope of his duties, the plaintiff is necessarily suing the public official in his individual capacity. *See Taylor v. Ashburn*, 112 N.C. App. 604, 607-08, 436 S.E.2d 276, 279 (1993) (if plain-

tiff fails to advance any allegations in his or her complaint other than those relating to a defendant's official duties, the complaint does not state a claim against a defendant in his or her individual capacity, and instead, is treated as a claim against defendant in his official capacity"), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994); 57 Am. Jur. 2d *Municipal, County, School, and State Tort Liability* § 70 (1988) (State entities, agents, and employees share immunity where claim involves activities which may be attributed to the State unless there are allegations that state agent or employee acted beyond scope of authority through wrongful acts).

In this case, plaintiff alleged in his complaint that "[i]n issuing the improvement permits as alleged above with fabricated soils data and other false statements, defendant Barriger acted wantonly and maliciously to protect his own interests in reckless disregard of the consequences to plaintiff should the permits so issued be revoked." Plaintiff supports his allegation by stating that Barriger

out of concern that his own negligent misrepresentations . . . might subject him to damages liability . . . fabricated soils depths for the lots that, at least in his mind, allowed him to issue permits without requiring the areal fill mandated by Section .1950(b). . . . In a further effort to present a facade of compliance with Section .1949(c) of the State Rules and for the express purpose of concealing his past malfeasance, defendant Barriger included among the "specifications and requirements" attached to the permits issued for lots 2, 3, 5, 8, 9, and 10 (all of which required PPB systems) that such systems were being used "at the request of the project engineer Mr. Wallace Davis." In fact, unbeknownst to plaintiff but well known to defendant Barriger, Mr. Davis had never made any such request since he was utterly unfamiliar with the workings of PPB systems.

Plaintiff has alleged that Barriger fabricated soil depths and attempted to conceal "his past malfeasance," actions not relating to Barriger's official duties as a sanitarian. Thus, plaintiff, by advancing allegations in his complaint other than those relating to his official duties, is suing Barriger in his individual capacity, and Barriger is "not shielded from liability if his alleged actions were 'corrupt or malicious' or if 'he acted outside of and beyond the scope of his duties'." Because Barriger, by basing his summary judgment motion on sovereign immunity, has failed to meet his burden of establishing that there is no genuine issue of material fact, the trial court correctly denied Barriger's motion for summary judgment.