CHARLENE D. JONES, Plaintiff v. PENNY L. KEARNS and CITY OF WINSTON-SALEM, Defendants

No. COA94-1012

(Filed 3 October 1995)

1. **Municipal Corporations § 459 (NCI4th)— defendant officer employed by city—officer engaged in governmental function—applicability of governmental immunity**

   Defendant city and defendant police officer, in her official capacity, were immune from suit under the doctrine of governmental immunity for damages of $250,000 or less since, at the time of the incident giving rise to plaintiff's alleged injury, the city did not have liability insurance for damages of $250,000 or less; defendant was employed as a police officer by defendant city and assigned to patrol the Dixie Classic Fair in her capacity as a member of the Special Operations Division, Mounted Patrol Unit; she was responding to a fellow officer's radio called for assistance because of a fight and resulting medical emergency when her horse stepped on plaintiff's foot; and it was clear that defendant was performing a governmental function.

   **Am Jur 2d, Municipal, County, School and State Tort Liability § 104.**

2. **Sheriffs, Police, and Other Law Enforcement Officers § 21 (NCI4th)— crowd control at fair—no malice of defendant officer—no special duty owed to plaintiff—officer immune from suit in individual capacity**

   The evidence was insufficient to establish a genuine issue as to whether defendant police officer acted with malice in performing her duties or owed a special duty to plaintiff, and defend-

JONES v. KEARNS

[120 N.C. App. 301 (1995)]

ant therefore was immune from suit in her individual capacity for injuries sustained by plaintiff when a horse ridden by defendant stepped on plaintiff's foot, where the officer was engaged in an attempt to control a large and unruly crowd during a medical emergency at a fair when the alleged incident occurred; nowhere in plaintiff's complaint or deposition did she allege or forecast evidence of malicious or corrupt conduct on the part of defendant officer; and defendant did not know plaintiff and did not undertake any special obligation to protect or perform a service for plaintiff individually.

### Am Jur 2d, Sheriffs, Police and Constables § 159.

Judge WYNN concurring in the result only.

Appeal by defendants from order signed 7 July 1994 by Judge Russell G. Walker, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 23 May 1995.

*Wood & Bynum, by B. Jeffrey Wood and Robert G. Spaugh, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, by Gusti W. Frankel, for defendant-appellants.*

MARTIN, MARK D., Judge.

Defendants appeal from a denial of their motion for summary judgment. We affirm in part, reverse in part, and remand.

Plaintiff filed this action 5 October 1993 against defendants Penny L. Kearns (Officer Kearns) and the City of Winston-Salem (the City) seeking money damages for injuries she sustained to her right foot on 6 October 1990 while a patron at the Dixie Classic Fair. The incident occurred when a horse ridden by Officer Kearns, an employee of the Winston-Salem Police Department assigned to the Special Operations Division, Mounted Patrol Unit, allegedly stepped on plaintiff's foot. The defendants denied the material allegations of plaintiff's complaint and pled the affirmative defenses of governmental immunity, public officers' immunity, and contributory negligence.

On 15 April 1994 defendants filed a motion for summary judgment or, in the alternative, partial summary judgment, for damages of $250,000.00 or less on the ground of governmental immunity. On 7

JONES v. KEARNS

[120 N.C. App. 301 (1995)]

July 1994 the trial court entered an order denying defendants' motion for summary judgment.

At the outset we note the trial court's denial of defendants' motion for summary judgment on the issue of governmental immunity is immediately appealable. *Corum v. University of North Carolina*, 97 N.C. App. 527, 531-532, 389 S.E.2d 596, 598 (1990), *aff'd in part, rev'd in part on other grounds*, 330 N.C. 761, 413 S.E.2d 276 (1992).

On appeal defendants contend the City of Winston-Salem is immune from suit in its governmental capacity for damages of $250,000.00 or less because the City is not indemnified by a contract of insurance for damages of $250,000.00 or less and is not a member of a local government risk pool.

A city may waive immunity in its governmental capacity through the purchase of liability insurance or by joining a local government risk pool. N.C. Gen. Stat. § 160A-485(a)(1994); *Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992) (addressing purchase of insurance). However, a city generally retains immunity from civil liability in its governmental capacity to the extent it does not purchase liability insurance or participate in a local government risk pool pursuant to Article 23 of Chapter 58 of the General Statutes. N.C. Gen. Stat. § 160A-485.

At the time of the alleged incident, 6 October 1990, the City did not have liability insurance for damages of $250,000 or less. Although the City did have excess insurance, it was subject to a $250,000.00 retention per incident. Moreover, at the time of the alleged incident, the City was not participating in a local government risk pool pursuant to Article 39 of Chapter 58 of the General Statutes. Because immunity from suit for damages of $250,000.00 or less had not been waived at the time of the alleged incident, the City is entitled to partial summary judgment in its governmental capacity for damages of $250,000.00 or less.

[1] Plaintiff contends the City is not entitled to governmental immunity because the Dixie Classic Fair is a proprietary function. Specifically, plaintiff contends the proprietary nature of the fair converts the provision of municipal law enforcement into a proprietary function and deprives the City of asserting the defense of governmental immunity.

JONES v. KEARNS

[120 N.C. App. 301 (1995)]

Assuming the application of governmental immunity under the present circumstances were a question of first impression, we believe plaintiff's arguments would carry great force. However, the clear and unambiguous precedent of our Supreme Court mandates that the question of whether the City is entitled to governmental immunity depends upon the mission or purpose of the municipal employee and whether the employee was acting in her official capacity at the time of the alleged negligence. We are bound by this precedent of the Supreme Court in our disposition of this case.

In the absence of governmental immunity, municipal tort liability is generally premised on the doctrine of *respondeat superior. See Edwards v. Akion*, 52 N.C. App 688, 279 S.E.2d 894 (1981) (applying *respondeat superior* principles in determining municipal tort liability for conduct of refuse collector), *aff'd*, 304 N.C. 585, 284 S.E.2d 518 (1981). As a corollary to this principle, our Supreme Court has squarely held that the key inquiry in determining whether a City retains immunity is the mission or purpose of the City's employee at the time of the alleged negligence. *Beach v. Tarboro*, 225 N.C. 26, 28, 33 S.E.2d 64, 65-66 (1945). *See also Rich v. City of Goldsboro*, 282 N.C. 383, 386, 192 S.E.2d 824, 826 (1972) (focus on agent's function allegedly causing injury); *Clark v. Scheld*, 253 N.C. 732, 737, 117 S.E.2d 838, 842 (1961) (focus on employee's duty at the time of the injury); *Hodges v. Charlotte*, 214 N.C. 737, 741, 200 S.E. 889, 891 (1939) (focus on whether employee was performing duties incidental to a governmental function).

If at the time of the alleged negligence, the City's officer or employee is performing a governmental function, governmental immunity protects a municipality, *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993) (citations omitted), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994), and its officers and employees sued in their official capacity. *Slade v. Vernon*, 110 N.C. App. 422, 426, 429 S.E.2d 744, 746 (1993). In determining whether an activity is governmental, our Supreme Court in *Beach* explained the court must focus on the mission of the city's employee who allegedly caused injury:

> The mission of the town's employee, out of which the alleged injury to the plaintiff arose, is the determining factor . . . not what such employee was called upon to do at other times and places, but what he was engaged in doing at the particular time and place alleged.

*Beach v. Tarboro,* 225 N.C. at 28, 33 S.E.2d at 65-66. It is well established that law enforcement is a governmental function. *Hare v. Butler,* 99 N.C. App. 693, 698, 394 S.E.2d 231, 235, *disc. review denied,* 327 N.C. 634, 399 S.E.2d 121 (1990).

At the time of the alleged incident, Officer Kearns was assigned to patrol the Dixie Classic Fair in her capacity as a member of the Special Operations Division, Mounted Patrol Unit. More particularly, Officer Kearns was responding to a fellow officer's radio call for assistance at the Midway because of a fight and resulting medical emergency. Plaintiff concedes that Officer Kearns was employed as a police officer of the City of Winston-Salem at the time of the alleged accident. Plaintiff also concedes that, at the time of the alleged accident, Officer Kearns was assigned by the police department to the Dixie Classic Fair. Therefore, after careful examination of Officer Kearns' mission at the time of the alleged negligence, it is clear she was performing a governmental function. Accordingly, the City of Winston-Salem and Officer Kearns, in her official capacity, are immune from suit under the doctrine of governmental immunity for damages of $250,000 or less.

[2] Finally, defendants contend Officer Kearns is immune from suit in her individual capacity.

> The general rule is that a public official is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties.

*Slade v. Vernon,* 110 N.C. App. at 428, 429 S.E.2d at 747. A police officer is a public official. *Shuping v. Barber,* 89 N.C. App. 242, 248, 365 S.E.2d 712, 716 (1988). Public officers are absolutely immune from liability for discretionary acts absent a showing of malice or corruption. *Piggott v. City of Wilmington,* 50 N.C. App. 401, 402-403, 273 S.E.2d 752, 753-754 (*quoting Smith v. State,* 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976)), *cert. denied,* 303 N.C. 181, 280 S.E.2d 453 (1981).

Plaintiff contends the evidence establishes a genuine issue of whether Officer Kearns acted with malice in performing her duties. Plaintiff also contends Officer Kearns owed a special duty to plaintiff, and therefore may be held liable even if she was engaged in governmental duties.

First, we examine plaintiff's contention the evidence establishes there is a genuine issue of whether Officer Kearns acted with malice in performing her duties.

Plaintiff must allege and prove corruption or malice when the defendant is in the performance of official or governmental duties involving the exercise of discretion. *Wilkins v. Burton*, 220 N.C. 13, 15, 16 S.E.2d 406, 407 (1941). *See also Hare v. Butler*, 99 N.C. App. at 700-701, 394 S.E.2d at 237 (plaintiff must allege and show a forecast of bad faith or malicious intent in order to raise an issue of fact with regard to public officer's immunity); *Jacobs v. Sherard*, 36 N.C. App. 60, 66, 243 S.E.2d 184, 189, *disc. review denied*, 295 N.C. 466, 246 S.E.2d 12 (1978) (where complaint does not allege that law enforcement officers exceeded their authority or acted outside the scope of the duty imposed upon them, dismissal of the officers under Rule 12(b)(6) is appropriate). Discretionary acts are those requiring personal deliberation, decision, and judgment. *Hare v. Butler*, 99 N.C. App. at 700, 394 S.E.2d at 236. Allegations of "reckless indifference" are not sufficient to satisfy plaintiff's burden to allege and forecast evidence of corruption or malice. *See Robinette v. Barriger*, 116 N.C. App. 197, 203, 447 S.E.2d 498, 502 (1994), *disc. review denied in part*, 339 N.C. 615, 454 S.E.2d 257 (1995).

Officer Kearns was on duty as a police officer when she responded to a fellow officer's radio call for assistance at the Midway, and therefore was a public official executing a governmental function at the time of the accident. Her decisions in controlling and in dispersing the large and unruly crowd to respond to the medical emergency all constitute discretionary decisions made within the course of her official duties. To survive a motion for summary judgment on the issue of whether Officer Kearns was liable in her individual capacity, therefore, plaintiff must allege and forecast evidence demonstrating Officer Kearns acted corruptly or with malice.

In her complaint plaintiff alleges Officer Kearns was negligent in failing to control her horse while attempting to control a large and unruly crowd during a medical emergency. Nowhere in her complaint or deposition does plaintiff allege or forecast evidence of malicious or corrupt conduct on the part of Officer Kearns. Although plaintiff alleges in her brief on appeal that Officer Kearns displayed a "reckless indifference" to the people in the crowd, this allegation, standing alone, does not satisfy plaintiff's burden, and we hold Officer Kearns is entitled to public officers' immunity.

We next address plaintiff's contention that Officer Kearns owed a special duty to plaintiff, and therefore may be held liable even if Officer Kearns was engaged in a governmental function.

Plaintiff relies on our Supreme Court's decision in *Hipp v. Ferrall*, 173 N.C. 167, 91 S.E. 831 (1917), to support her contention Officer Kearns owed a special duty to plaintiff. In that case the Supreme Court articulated the rule of public officers' immunity:

> It is held in this State that public officers, in the performance of their official and governmental duties involving the exercise of judgment and discretion, may not be held liable as individuals for breach of such duty unless they act corruptly and of malice.

*Id.* at 169, 91 S.E. at 832. The Court noted an exception, however, where a public officer undertakes to perform a "special duty" for an individual, such as a clerk who negligently fails to index a docketed judgment. The Court reasoned that, although these duties are in some respects public in their nature, they also involve a duty special to the person injured, and in such case individual liability will attach. *Id.* at 171, 91 S.E. at 833.

We note that more recent decisions cast doubt on the continued vitality of *Hipp* to claims against clerks in their individual capacity who negligently, but in good faith, perform official duties absent specific statutory authorization. *See, e.g., Whitaker v. Clark*, 109 N.C. App 379, 427 S.E.2d 142 (1993) (plaintiff fails to state a claim against Department of Social Services social workers individually for negligence in failing to remove child from father's custody and thus preventing child's death; absent allegations in the complaint separate and apart from official duties, the complaint does not state a claim against the defendants individually); *Taylor v. Ashburn*, 112 N.C. App. 604, 436 S.E.2d 276 (1993) (plaintiff fails to state a claim against a fire fighter, individually, where fire truck defendant was driving collided with plaintiff's car while fire fighter was responding to the call); *Robinette v. Barriger*, 116 N.C. App. 197, 447 S.E.2d 498 (1994) (no claim stated individually against county environmental health supervisor who allegedly issued permit to plaintiff with false soil data); *City of Winston-Salem v. Yarbrough*, 117 N.C. App. 340, 451 S.E.2d 358 (1994) (where plaintiff alleges city attorney negligently misrepresented the legality of an agreement, the complaint fails to state a claim against city attorney in his individual capacity), *disc. review denied*, 340 N.C. 110, 456 S.E.2d 311, *disc. review denied*, 340 N.C. 260, 456 S.E.2d 519 (1995).

In any event, the facts of this case nevertheless reveal that Officer Kearns undertook no special duty with respect to plaintiff. It is indisputable that Officer Kearns did not know plaintiff and did not undertake any special obligation to protect or perform a service for plaintiff individually. Rather, Officer Kearns had a duty to the general public to keep order at the fair and prevent crime. *See, e.g., Braswell v. Braswell,* 330 N.C. 363, 370, 410 S.E.2d 897, 901 (1991) (as a general rule police officers act for the public and therefore there is no liability for the failure to furnish police protection to specific individuals), *reh'g denied,* 330 N.C. 854, 412 S.E.2d 550 (1992). Therefore, Officer Kearns is entitled to the defense of public officers' immunity in her individual capacity.

In summary, we reverse in part, having concluded the City and Officer Kearns, in her official capacity, are entitled to partial summary judgment based on governmental immunity for any damages of $250,000.00 or less and, in addition, that Officer Kearns, in her individual capacity, is entitled to summary judgment based on public officers' immunity.

To the extent plaintiff's claim exceeds $250,000.00, the City and Officer Kearns, in her official capacity, are not entitled to the defense of governmental immunity. We therefore affirm the trial court's denial of the City's motion for summary judgment for damages in excess of $250,000.00, and remand to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judge EAGLES concurs.

Judge WYNN concurs in the result only with separate opinion.

Judge WYNN concurring in the result only.

Because the majority's opinion is based on controlling precedent, I concur with the majority's determination that the City of Winston-Salem and Officer Kearns, in her official capacity, are entitled to partial summary judgment based on governmental immunity for any damages up to and including $250,000.00. I concur in this result only because of constraints of the doctrine of sovereign immunity adopted by our Supreme Court and resulting interpretations. I write separately to emphasize the unfairness of this outcome and to reiterate a view voiced many years ago by then Judge (later Chief Judge) Naomi

Morris that although extensive reasons exist for the abolition of sovereign immunity in tort, "until the Supreme Court or the General Assembly finds these reasons to be persuasive" we are bound by the doctrine of sovereign immunity. *Vaughn v. County of Durham*, 34 N.C. App. 416, 421, 240 S.E.2d 456 (1977); *Steelman v. New Bern*, 279 N.C. 589, 184 S.E.2d 239 (1971); *See also, Smith v. State*, 289 N.C. 303, 322, 222 S.E.2d 412, 424-425 (1976).

Summary judgment requires that we view the facts in a light most favorable to the nonmoving party. *Hinson v. Hinson*, 80 N.C. App. 561, 563, 343 S.E.2d 266, 268 (1968). From the plaintiff's perspective, the record establishes that Ms. Jones attended the fair with her two daughters, ages six and eight. They stood in line for one of the rides at the fair, called the "Himalaya" when Officer Kearns entered the area on horseback. In an apparent attempt to disperse people that had assembled in the "Midway" area of the fairgrounds a few feet away from Ms. Jones and her children, Officer Kearns rode her horse directly into the gathering using profanity and shouting to the crowd of people to "move out of the way." The horse became very excited; then lunged sideways and backward into the line of people at the "Himalaya" and stepped on Ms. Jones' foot. The horse remained on her foot for several seconds until another fair patron moved the horse.

The record further indicates that this was not the first time Officer Kearns had been involved in an incident while riding her police horse. Plaintiff's evidence showed that prior to Ms. Jones' injury, Officer Kearns had engaged in a race with a middle-school child, while playing "Cops and Robbers." While chasing the child, the child fell in the path of the horse and the horse kicked the child. The child later received treatment at a local hospital and Officer Kearns' supervisor told her not to race children on the school grounds anymore.

If the issue before us today was whether the facts in the instant case are sufficient to withstand a claim of negligence, there is little doubt that we would find for Ms. Jones and award a trial on the merits. However, because the offending party is a governmental entity and its employee, she gets virtually nothing because our State continues to employ a doctrine of questionable validity—sovereign immunity.

The doctrine of sovereign immunity, or governmental immunity, shields a municipality and its officers or employees sued in their offi-

cial capacity from suit for torts committed while the officers or employees are performing a governmental function. *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). Sovereign immunity is absolute unless the municipality consents to be sued or waives its immunity through the purchase of liability insurance. N.C. Gen. Stat. § 160A-485(a) (1994); *See EEE-ZZZ Lay Drain*, 108 N.C. App. 24, 27, 422 S.E.2d 338, 340 (1992).

The doctrine of sovereign immunity was first adopted by our Supreme Court in 1889 in *Moffitt v. Asheville*, 103 N.C. 237, 9 S.E. 695 (1889). *Steelman v. City of New Bern*, 279 N.C. 589, 592, 184 S.E.2d 239, 241 (1971). Earlier North Carolina cases had expressly rejected the doctrine. *See, e.g., Smith v. State*, 289 N.C. at 312, 222 S.E.2d at 418 (citing cases that had rejected the doctrine of sovereign immunity prior to *Moffitt*). The origins of this 'judge-made' doctrine derived from feudal England where " 'the king could do no wrong.' " *Steelman v. City of New Bern*, 279 N.C. at 592, 184 S.E.2d at 241. Following this rationale, the monarchy was sovereign and could not be liable for damage to its subjects. *Id.* at 592, 184 S.E.2d at 241. Accordingly, when a city or town acts in its governmental capacity, the municipality incurs no liability for the negligence of its officers.

It is well established that the doctrine of sovereign immunity has been under vigorous attack for many years. *See, e.g.,* Comment, *Waiving Local Governmental Immunity in North Carolina: Risk Management Programs Are Insurance*, 27 Wake Forest L. Rev. 709 (1992); Norman W. Shearin, Jr., *Municipal Immunity From Tort Liability: Judicial Abrogation*, 5 Wake Forest Intra. L. Rev. 383 (1969); Comment, *The Role of the Courts in Abolishing Governmental Immunity*, 1964 Duke L.J. 888 (1964); James M. Talley, Jr., *Judicial Abrogation of the Doctrine of Municipal Immunity to Tort Liability*, 41 N.C.L. Rev. 290 (1963). As early as 1957, in *Hargrove v. Town of Cocoa Beach*, the Supreme Court of Florida retreated from its previously announced position on sovereign immunity. 96 So.2d 130 (Fla. 1957); Annot., 60 A.L.R.2d 1193; *See Steelman v. New Bern*, 279 N.C. at 593, 184 S.E.2d at 242. In abolishing this doctrine, the Court in *Hargrove* recognized that sovereign immunity "had been erroneously transposed into our democratic system and that the time had arrived to declare this doctrine anachronistic not only to our system of justice, but to our traditional concepts of democratic government." 96 So.2d at 132; Annot., 60 A.L.R.2d at 1195. That Court then held that an individual who suffers a direct per-

sonal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment is entitled to redress for the wrong done. *Id.* at 593, 184 S.E.2d at 242.

When *Steelman* was decided, fifteen jurisdictions, in addition to Florida, had already overruled or greatly modified the doctrine of sovereign immunity in tort actions. 279 N.C. at 593, 184 S.E.2d at 242.[1]

In *Steelman v. New Bern*, our Supreme Court suggested: "It may well be that the logic of the doctrine of sovereign immunity is unsound and that the reasons which led to its adoption are not as forceful today as they were when it was adopted." 279 N.C. at 595, 184 S.E.2d at 243. The Court, however, declined to abolish a municipality's sovereign immunity from tort liability for the negligence of its agents acting in the scope of their employment. It reasoned that, although the doctrine was 'judge-made,' the General Assembly had recognized it as the public policy of the State by enacting legislation which permitted municipalities to purchase liability insurance and thereby waive their immunity to the extent of the amount of insurance obtained. *Id.* at 594, 184 S.E.2d at 242-243. The Court further recognized that "despite our sympathy for the plaintiff in this case, we feel that any further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court." *Id.* at 595, 184 S.E.2d at 243. Subsequent case law regarding the abolition of the doctrine of sovereign immunity restated the same view expressed in *Steelman* that any changes in the doctrine should come from the General Assembly, not the Court. *See, e.g., Orange Co. v. Heath*, 282 N.C. 292, 192 S.E.2d 308 (1972).

Then, in 1976, in *Smith v. State*, 289 N.C. at 313, 222 S.E.2d at 419, our Supreme Court chose not to defer to the Legislature, but instead, under its own authority abolished sovereign immunity in contract actions. The Court held that "whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." 289 N.C. at 320, 222 S.E.2d at 423-424. In so doing the Court recognized the prevailing consideration that "[a] citizen's petition to the legislature for relief from the state's breach of contract is an unsatisfactory and frequently a totally inadequate remedy for an injured party, . . . [and that] courts are a

---

1. At the time of *Smith v. State*, 289 N.C. at 313, 222 S.E.2d at 419, an opinion that I later point out, abolished sovereign immunity with regard to contract actions, twenty-four states had judicially abrogated or otherwise modified the doctrine of sovereign immunity as it relates to tort actions against the state.

proper forum in which claims against the state may be presented and decided upon known principles." *Id.* at 320, 222 S.E.2d 423.

Interestingly, in dissent to the majority's view in *Smith*, Justice I. Beverly Lake, Sr., although vigorously arguing that the Court had exceeded its authority in abolishing sovereign immunity in contract actions, astutely pointed out that since the Court had done so, it was error to limit the abrogation to contract actions only:

> Another relatively minor error in the decision is the limitation of the demise of sovereign immunity to actions on contracts. If the courts of North Carolina have jurisdiction to hear and determine Dr. Smith's suit for alleged wrongful discharge from employment, why not Joe Jones' suit for trespass, negligent injury to person or property, or malicious prosecution?

*Smith*, 289 N.C. at 339, 222 S.E.2d at 412 (Lake, J., dissenting).

The answer to Justice Lake's question is the same now as it was then—our Supreme Court should likewise consider the abolition of sovereign immunity in tort actions. Individuals subjected to injury or death proximately caused by the negligent acts of agents or employees of a municipality who have acted within the scope of their authority are entitled to redress for the wrong done. Reflecting this sentiment, the General Assembly enacted G.S. § 160A-485(a) which provides that a municipality is empowered, *but not required,* to waive governmental immunity by securing liability insurance. Such immunity is waived only to the extent of insurance so secured. Some municipalities have voluntarily relinquished the shield of sovereign immunity by obtaining liability insurance.[2] Given the fact that municipalities are not required to take such action, what would motivate a municipality to purchase insurance and waive its inherent authority to refuse to pay claims for damages? When a city obtains liability insurance, this action reflects a moral response by the city to provide its citizens relief for injuries sustained at the hands of its city's negligent agents or employees. Although it is admirable for some cities to waive sovereign immunity when not required to do so, such responsibility should be a requirement for all. The doctrine of sovereign immunity shields this responsibility.

The unjust and unfair result rendered in the instant case by the application of the doctrine of sovereign immunity compels a reexam-

---

2. As noted previously, the City of Winston-Salem has waived its sovereign immunity for damages exceeding $250,000.00.

ination of this common law doctrine. Ms. Jones received a 35% permanent partial disability rating for her right foot and a 10% permanent partial disability rating for her right leg as a direct result of the incident at the fair. Additionally, she incurred medical bills in excess of $37,000.00. Yet, Ms. Jones may be left without any remedy if her damages do not exceed $250,000.00. This result can no longer be justified in our modern democratic society. Indeed, over forty years ago, our Supreme Court acknowledged that " 'the current trend of legislative policy and of judicial thought is toward the abandonment of the monarchistic doctrine of governmental immunity.' " *Lyon & Sons, Inc. v. Board of Education*, 238 N.C. 24, 27, 76 S.E.2d 553, 555 (1953). The eighteenth century logic that " 'the king could do no wrong,' " *Steelman v. City of New Bern*, 279 N.C. at 592, 184 S.E.2d at 241, has outlived its time.