CROSS v. RESIDENTIAL SUPPORT SERVICES

[123 N.C. App. 616 (1996)]

SHIRLEY CROSS AND CHARLES A. CROSS, INDIVIDUALLY AND AS ADMINISTRATORS OF THE ESTATE OF BARRY ELLIS CROSS, AND JANETTE GRIFFIN, PLAINTIFFS v. RESIDENTIAL SUPPORT SERVICES, INC., ROBERT HAMILTON RHODES, JR., AND MECKLENBURG COUNTY, DEFENDANTS

No. COA95-705

(Filed 20 August 1996)

**1. Municipal Corporations § 444 (NCI4th)— purchase of insurance by area authority—no waiver of immunity by county**

Purchase of insurance by RSS, as required by the Mecklenburg County Area Mental Health, Developmental Disabilities, and Substance Abuse Authority, did not constitute waiver of governmental immunity by defendant county, since area authorities are separate local political divisions, and different statutes provide for waiver of immunity by each. N.C.G.S. § 122C-152(a); N.C.G.S. § 153A-435(a).

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 37 et seq.**

**Comment Note.—Municipal immunity from liability for torts. 60 ALR2d 1198.**

**Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.**

**Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.**

**2. Municipal Corporations § 445 (NCI4th)— participation in local governmental risk pool—total waiver of immunity**

The trial court erred in ruling that defendant county had immunity for claims in the amount of $1,000,000 or less, since the county's participation in a local governmental risk pool operated as a total waiver of governmental immunity in regard to plaintiff's claim.

**Am Jur 2d, Municipal, County, School, and State Tort Liability § 39.**

CROSS v. RESIDENTIAL SUPPORT SERVICES

[123 N.C. App. 616 (1996)]

Comment Note.—Municipal immunity from liability for torts. 60 ALR2d 1198.

Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.

Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.

Appeal by plaintiffs and cross-appeal by defendant Mecklenburg County from order entered 19 April 1995 by Judge Hollis M. Owens, Jr. in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 March 1996.

*Devore & Acton, P.A., by Fred W. DeVore, III, for plaintiffs.*

*Ruff, Bond, Cobb, Wade & McNair, L.L.P., by James O. Cobb, for defendant Mecklenburg County.*

LEWIS, Judge.

In this action, plaintiffs appeal the trial court's decision that defendant County of Mecklenburg (County) has governmental immunity for its claims in the amount of one million dollars ($1,000,000) or less.

On 10 June 1992, Barry Ellis Cross, a mentally disabled adult, was killed when he left a County van and was hit by a car driven by defendant Robert Hamilton Rhodes, Jr. as he tried to cross the street. At the time of the accident, the County had primary and excess policies that together provided coverage for bodily injury and property damage claims in excess of a self-insured retention of one million dollars ($1,000,000) per occurrence. In addition, on 30 March 1988, the County, the City of Charlotte, and the Charlotte-Mecklenburg Board of Education entered into an Insurance and Risk Management Joint Undertaking Agreement (the Joint Agreement) for management of risks. The Joint Agreement incorporates by reference a Trust Agreement executed on 1 July 1987. Under these agreements, all three participants benefit from a two-tiered self-insurance program ("risk management program"). The risk management program is managed by the Division of Insurance and Risk Management (DIRM) of

the City's Finance Department. Under the first tier, each participant makes contributions but itself retains the first $500,000 per occurrence of losses. DIRM holds and invests each participant's first tier contributions; however, the funds invested are owned by the contributing participant. The second tier consists of the Tier 2 Reserve Fund which is funded jointly by all participants. Funds from this tier are available to each participant to cover losses in excess of $500,000 per occurrence but not exceeding one million dollars ($1,000,000) per occurrence.

On 15 October 1993, plaintiffs filed a civil action for negligence against defendants for actions which allegedly resulted in the death of Mr. Cross. After the complaint was amended and responsive pleadings were filed, on 23 January 1995, the County filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for partial summary judgment on plaintiffs' claims based on governmental immunity. On 19 April 1995, Judge Hollis M. Owens denied the County's motion to dismiss but granted partial summary judgment for the County holding that it had governmental immunity for plaintiffs' claims in the amount of one million dollars ($1,000,000) or less. On 10 May 1995, plaintiffs appealed the grant of partial summary judgment. On 17 May 1995, the County cross-appealed the denial of the motion to dismiss.

A preliminary matter must be addressed. In its brief, the County asks this Court to dismiss plaintiffs' appeal. Since the County has not made this request in a motion pursuant to N.C.R. App. P. 37, we decline to consider its request. See Morris v. Morris, 92 N.C. App. 359, 361, 374 S.E.2d 441, 442 (1988).

[1] We first consider plaintiffs' assertion that the County has waived immunity because the Mecklenburg County Area Mental Health, Developmental Disabilities, and Substance Abuse Authority (Area Authority) required its service provider, Residential Support Services, Inc. (RSS), to purchase insurance. We are not persuaded.

Plaintiffs' assertion is based on a contract for developmental disabilities services, including services provided to Barry Cross. This contract was executed by Mecklenburg Group Homes, Inc. (now RSS) and the Area Authority, an entity which plaintiff asserts acts as an agent of the County. In this contract, the Area Authority required RSS to take out insurance in an amount not less than $500,000. As required, RSS did purchase such insurance.

Plaintiffs cite N.C. Gen. Stat. section 122C-152. This statute provides, in pertinent part:

(a) An area authority, by securing liability insurance as provided in this section, may waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent, employee, or board member of the area authority when acting within the scope of his authority or within the course of his duties or employment. Governmental immunity is waived by the act of obtaining this insurance, but it is waived only to the extent that the area authority is indemnified by insurance for the negligence or tort.

G.S. § 122C-152(a) (1993).

Assuming *arguendo* that the Area Authority's requirement, in the contract, that RSS purchase insurance, is a waiver of immunity by the Authority under this provision, it does not necessarily follow that the County has thereby waived immunity. G.S. section 122C-152 deals with a waiver of immunity by an area authority, not by a County. Under the statute, it is the Area Authority, not the County, that is indemnified by a decision to purchase insurance. See G.S. § 122C-152(b) (1993) (stating that the contract of insurance shall insure the area authority and its board members).

Under N.C. Gen. Stat. section 122C-116(1993), an area authority is "a local political subdivision of the State except that a single county area authority is considered a department of the county in which it is located for the purposes of Chapter 159 of the General Statutes." Chapter 159 deals with local government finance. *See* N.C. Gen. Stat. § 159-1(a) (1994). Area authorities are separate local political divisions in regard to the powers and duties of area authorities as enumerated in N.C. Gen. Stat. section 122C-117(1993), including the provision of services to clients like Barry Cross. Waiver of immunity by a county is provided for in N.C. Gen. Stat. section 153A-435(a) (1991). Given these statutory distinctions between counties and area authorities and the waiver provisions of G.S. section 122C-152, we hold that purchase by RSS of insurance, as required by the Area Authority, does not constitute a waiver of immunity by the County.

[2] Plaintiffs also assert that the County has waived governmental immunity by participation in a local governmental risk pool. The County does not contest that it has insurance coverage for claims

over one million dollars. The County also concedes that our recent decision, *Lyles v. City of Charlotte*, 120 N.C. App. 96, 461 S.E.2d 347, *disc. review allowed*, 342 N.C. 414, 465 S.E.2d 542 (1995), establishes that it has waived governmental immunity for claims in excess of $500,000 by its participation in a local governmental risk pool. The County contends, however, that *Lyles* does not resolve the question of whether it retains immunity for claims of $500,000 or less.

In *Lyles*, we analyzed the same risk management program at issue in this appeal and held that the City of Charlotte had waived its right to assert governmental immunity by participating in this program which we held constituted a local government risk pool under N.C. Gen. Stat. section 160A-485(a) (1994) and N.C. Gen. Stat. section 58-23-5(1994). G.S. section 160A-485(a), provides, in pertinent part:

(a) Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General State Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability . . . .

G.S. § 160A-485(a) (1994).

A similar statute, N.C. Gen. Stat. section 153A-435(1991), governs waiver of immunity by a county. This statute provides, in pertinent part:

(a) A county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property or against absolute liability for damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment . . . .

Purchase of insurance pursuant to this subsection waives the county's governmental immunity, *to the extent of insurance coverage*, for any act or omission occurring in the exercise of a governmental function. *Participation in a local government risk pool pursuant to Article 39 [sic] [Article 23] of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section . . . .*

CROSS v. RESIDENTIAL SUPPORT SERVICES

[123 N.C. App. 616 (1996)]

(b) ... *To the extent of the coverage of insurance purchased pursuant to subsection (a)* of this section, governmental immunity may not be a defense to the action [authorized by this subsection]. ...

G.S. § 153A-435 (1991) (emphasis added).

Citing *Jones v. Kearns,* 120 N.C. App. 301, 462 S.E.2d 245, *disc. review denied,* 342 N.C. 414, 465 S.E.2d 541 (1995), the County asserts that, pursuant to the "to the extent of the coverage of insurance" language in this statute, it has waived immunity only "to the extent" that plaintiffs' claim exceeds $500,000 because it contends that it is covered under the risk management program only for claims above that amount. In *Jones,* we applied a partial waiver approach where we held that a city had not waived immunity for damages of $250,000 or less because its excess insurance coverage was subject to a $250,000 retention per incident. *Id.* at 303, 462 S.E.2d at 246.

In *Lyles,* we rejected a similar argument by the City of Charlotte. The City sought to minimize the risk-sharing character of this risk management program by insisting that it never exercised the option to borrow money from the Tier 2 funds. *Lyles,* 120 N.C. App. at 105, 461 S.E.2d at 353. In response, we held that the City had waived immunity by participation in a local governmental risk pool and concluded that "the City's failure to exercise the option of using Tier 2 funds does not detract from the nature of the Tier 2 pool itself and is immaterial for purposes of characterizing the City's arrangement." *Id.* at 106, 461 S.E.2d at 353. In so upholding the trial court's denial of summary judgment, we, in effect, held that the City's participation in this risk management program operated as a total, not a partial, waiver of immunity. *See id.*

Our examination, in this appeal, of the components of this risk management program further compels the conclusion that participation in this program constitutes a total waiver of immunity. The Joint Agreement describes the program as follows: At the Tier 1 level ($500,000 or under), each participant finances its own loss exposure by contributing funds annually which are held and invested by DIRM for that participant. A participant owns the Tier 1 funds it contributes. At the end of each fiscal year, the Tier 1 investment income and amounts remaining are placed into the participants' individual accounts.

At the Tier 2 level, each participant annually contributes a predetermined amount into the Tier 2 Reserve Fund from which losses in excess of the Tier 1 level ($500,000) may be paid. All monies in this fund are available to any participant "to pay claims where the amount of liability is in excess of that party's Tier 1 funds and the amount in its Tier 2 account." The funds of each party are separately accounted for within the Tier 2 Reserve Fund and the interest earnings for a participant's portion of the assets in the Fund are attributed to its separate account.

Each participant must raise and thereafter maintain a target amount in the Reserve Fund. If a participant has claims paid out of the Reserve Fund and taken from the account of another participant, that participant must repay the funds paid plus interest. Furthermore, if all of a participant's Tier 1 funds are expended to pay claims prior to the end of a given fiscal year, DIRM may obtain funds from the Tier 2 Reserve Fund to pay Tier 1 claims, subject to certain limitations and conditions set out in the Trust Agreement.

As we emphasized in *Lyles*, this risk management program is, fundamentally, a device that permits the participants to share risks. Granted, Tier 2 reserve funds ordinarily are not disbursed to pay claims at the Tier 1 level, *i.e.*, claims of $500,000 or less. However, such disbursement could occur if the County's Tier 1 funds are expended to pay claims prior to the end of a given fiscal year.

We conclude that the trial court erred by ruling that the County has immunity for amounts of $1,000,000 or less. In accordance with *Lyles*, we hold that the County's participation in this risk management program operates as a total waiver of governmental immunity in regard to plaintiff's claims.

The County cross-appeals on the issue of whether the trial court erred by denying its motion to dismiss plaintiff's claims for lack of subject matter jurisdiction. A trial court's denial of a motion to dismiss for lack of subject matter jurisdiction is an interlocutory order and, as such, is not immediately appealable. *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327, 293 S.E.2d 182, 184 (1982) (citing *Shaver v. Construction Co.*, 54 N.C. App. 486, 283 S.E.2d 526 (1981)). An appeal from a nonappealable interlocutory order should be dismissed. *Veazey v. City of Durham*, 231 N.C. 357, 362, 364, 57 S.E.2d 377, 382, 383 (1950); *see also Shaver*, 54 N.C. App. at 488, 283 S.E.2d at 527.

The trial court order granting the County's motion for summary judgment on the grounds that the County has governmental immunity for claims up to one million dollars is reversed and remanded. The County's cross-appeal is dismissed.

Judges GREENE and SMITH concur.