UNITED STATES of America, ex rel. James and Jane LINDSEY, Plaintiff,

v.

TREND COMMUNITY MENTAL HEALTH SERVICES; and State of North Carolina, Department of Human Resources, Defendants.

James Lindsey and wife, Jane Lindsey; and Jasmine M., by and through her guardian ad litem, Douglas A. Claxton, Plaintiffs,

v.

H. David Bruton, Secretary, North Carolina Department of Health and Human Services; and Trend Community Mental Health Services, Defendants.

Nos. Civ.1:97CV311, Civ.1:98CV154.

United States District Court,
W.D. North Carolina,
Asheville Division.

Aug. 12, 1999.

Clifford C. Marshall, Assistant U.S. Attorney, Asheville, NC, Michael F. Hertz, Judith Rabinowitz, Rina C. Tucker, U.S. Dept. of Justice—Civil Division, Washington, DC, for United States, plaintiff.

Larry McDevitt, Michelle Rippon, W. Carleton Metcalf, Asheville, NC, for James & Jane Lindsey.

Douglas A. Claxton, Asheville, NC, for Jasmine M.

Thomas W. Murrell, III, Jill Crawley Griset, Charlotte, NC, Frank P. Graham, Asheville, NC, for defendants Trend Community Mental Health Servs.

Gayl M. Manthei, Belinda Smith, N.C. Department of Justice, Raleigh, NC, for defendants Bruton and State of North Carolina.

## *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

**THESE MATTERS** are before the Court on the following motions: the motion to dismiss of Trend Community Mental Health Services (Trend), filed March 15, 1999; the motion for judgment on the pleadings of the North Carolina Department of Human Resources (State), filed May 17, 1999; Trend's motion to dismiss the cross-claims of the State, filed May 20, 1999; Trend's motion to stay, filed July 2, 1999; the motion to consolidate of James and Jane Lindsey (Lindseys), filed July 9, 1999; the Lindseys' motion for attorney conference, filed July 9, 1999; and the State's motion to stay, filed July 26, 1999. Responses have been filed and the motions are ready for resolution.

1. A *qui tam* action is authorized by the False Claims Act which provides that any person may bring a civil action for a violation of the Act "for the person and for the United States

## I. PROCEDURAL HISTORY

In October 1997, the Lindseys brought a *qui tam* action against Trend and the State (Civil No. 1:97cv311) alleging violations of the federal False Claims Act, 31 U.S.C. §§ 3729, *et. seq.*[1] In December 1998, the United States intervened as a Plaintiff against Trend only, asserting a cause of action pursuant to the False Claims Act and common law claims for payment under mistake of fact and unjust enrichment.

The Lindseys brought suit in July 1998 against the State Department of Health and Human Resources and Trend (Civil No. 1:98cv154) alleging causes of action pursuant to 42 U.S.C. § 1983 against both Defendants for violations of their rights under the Medicaid Act, §§ 1396n(c)(2)(A), (B), (C) and (E) and Code of Federal Regulations § 441.302(a), (C), (D), and (f)(2). In addition, the Lindseys alleged claims against Trend alone for breach of contract, negligence, fraud and constructive trust.

## II. DISCUSSION

### A. The motions to stay.

Trend has moved to dismiss the *qui tam* action, alleging that because it acts for the State, it is a local governmental entity entitled to sovereign immunity. The State has moved for judgment on the pleadings arguing that it is not a person under the Act; but, even if it were, the suit is barred by the Eleventh Amendment.

Trend and the State seek a stay of the *qui tam* action pending the Supreme Court's decision in *United States ex rel. Stevens v. State of Vermont Agency of Natural Resources*, 162 F.3d 195 (2d Cir. 1998), *cert. granted*, —— U.S. ——, 119 S.Ct. 2391, 144 L.Ed.2d 792 (1999). The Second Circuit in *Stevens* ruled that "[i]n light of the fact that *qui tam* claims are

Government. The action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1).

designed to remedy only wrongs done to the United States, and in light of the substantial control that the government is entitled to exercise over such suits, we conclude that such a suit is in essence a suit by the United States and hence is not barred by the Eleventh Amendment." *Id.*, at 203. The Circuit also held that the word "person" in the False Claims Act, which prohibits the filing of false or fraudulent claims against the United States, includes states and thus, an action can be brought under the Act against a state. *Id.*, at 208. The United States and the Lindseys oppose a stay.

■ In *Stevens*, the United States never intervened as a plaintiff. Nonetheless, the Second Circuit, quoting the Fourth Circuit, held the "United States is the real party in interest in any False Claims Act suit, even where it permits a *qui tam* relator to pursue the action on its behalf." *Id.*, at 202 (quoting *United States ex. rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 50 (4th Cir. 1992)). In the case at hand, the United States has intervened as to one Defendant and not as to the other. Nonetheless, the undersigned does not find it would be in the best interests of the parties to grant a stay pending the Supreme Court's resolution of *Stevens*.

■ A district court has inherent authority to control the disposition of cases on its docket. 28 U.S.C. § 1651; *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed.Cir.1997) (citing *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). Since October 1997, the Lindseys have attempted to have their day in court. Almost two years later, the parties still have not had the initial pretrial conference. No case management plan has been entered; no discovery has occurred. Contrary to Trend's assurances, there is no guarantee that the Supreme Court will dispose of this case during its next term, a fact which would lead to even further delay if a stay is granted. *Id.* ("[A] stay of indefinite duration in the absence of a pressing need" is an abuse of discretion.).

Moreover, balancing the interests in favor of a stay versus those weighing against one, the undersigned can find no reason to allow the case to further languish. *Id.* Indeed, by the time the case is ready for trial, the Supreme Court may have rendered its decision. However, such a decision would have the potential to moot only a portion of this action because the United States in its intervention complaint has asserted common law claims against Trend. Moreover, the discovery necessary to prove a claim under the Act will be relevant to proof of the common law claims. And, if the Plaintiffs successfully pursue their False Claims Act cause of action, any execution of judgment may be stayed pending the Supreme Court's determination. Therefore, there is no pressing need for the stay. *Id.* However, granting the stay would further impair the Plaintiffs' access to the courts. *Id.*, at 1418. Having "balance[d] interests favoring a stay against interests frustrated by the action," the Court declines to stay this matter pending the Supreme Court's resolution of the *Stevens* decision. *Id.*, at 1416. "Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it." *Id.* The motion for a stay is therefore denied.

**B. The motions to dismiss and for judgment on the pleadings.**

Trend has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Rule 9(b) for failure to particularize allegations of fraud and mistake. The Court first considers the motion to dismiss.

In ruling on a motion to dismiss for failure to state a claim, the Court must "accept the factual allegations in the plaintiffs' complaint and must construe those facts in the light most favorable to the plaintiffs.... [Dismissal may occur] only if it appears beyond doubt that the plaintiffs

can prove no set of facts in support of their claim that would entitle them to relief." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997); *Shepard's, Motions in Federal Court*, § 5.124, at 367 (2d ed.1991). "To survive a motion under Fed. R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." Shepards, § 5.123 at 366. If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The parties have included in their motions and oppositions thereto matters which are outside the scope of the pleadings. The Court has limited its consideration to matters contained within the pleadings and therefore has not converted this motion to one for summary judgment. Fed.R.Civ.P. 12(b).

In a 40–page brief to which are attached at least 100 pages of exhibits, counsel for Trend argues it is a local governmental entity and thus not a person under the statute; and, moreover, governmental entities are immune from the types of damages imposed by the False Claims Act.[2] The Court first notes the Fourth Circuit's characterization of the False Claims Act.

> Originally passed during the Civil War in response to overcharges and other abuses by defense contractors, Congress intended that the False Claims Act, 31 U.S.C. §§ 3729–3733 and its *qui tam* action would help the government uncover fraud and abuse by unleashing a "posse of *ad hoc* deputies to uncover and prosecute frauds against the government." The first substantial amendments to the False Claims Act came in 1986. In the 1986 amendments, Con-

gress sought to broaden the availability of the False Claims Act to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." Congress was acting, in part, in response to judicial decisions taking a restrictive approach to the False Claims Act.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999) (quoting *Milam*, 961 F.2d at 49) (other internal citations omitted). Bearing this in mind, the complaint alleges that Trend is "a local area mental health authority organized and existing pursuant to N.C.Gen. Stat. § 122C with its headquarters in Hendersonville, Henderson County, North Carolina. Trend provides mental health, developmental disabilities, and substance abuse services to the citizens of Henderson and Transylvania counties." Complaint, filed October 10, 1997; Complaint of the United States, filed December 16, 1998. Trend admits it is a "local governmental entity." Section 122C–116 of the North Carolina General Statutes provides that "[a]n area authority is a local political subdivision of the State ...," and § 122C–117 describes the duties thereof as including the implementation of "community-based mental health, developmental disabilities, and substance abuse services." Both by statute and case law, area authorities are local political subdivisions of the State. *Cross v. Residential Support Services, Inc.*, 123 N.C.App. 616, 619, 473 S.E.2d 676, 678 (1996). Thus, if a state qualifies as a person under the False Claims Act, then Trend does as well.[3]

◼ Moreover, the undersigned finds the Fourth Circuit has determined that states are "persons" under the False Claims Act and therefore subject to suit. The Fourth Circuit has clearly ruled:

**2.** Counsel included as exhibits what appears to be the entire legislative history for the False Claims Act. For future edification, counsel is admonished to be economical in both the brief and the exhibits.

**3.** The statute provides that a civil action may be brought against any "person" in violation of its prohibitions against the knowing presentation of false or fraudulent claims to the United States Government. 31 U.S.C. §§ 3729(a), 3730(a).

[W]e recognize that no court has yet considered the interposition of the Eleventh Amendment to the False Claims Act in the wake of *Seminole [Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ]. Amici [ ] make an interesting case that the False Claims Act was not intended to apply to the states, which they think takes on added significance post-*Seminole.* Amici [ ] also suggest we need to take another look at Eleventh Amendment immunity in the *qui tam* context. We disagree. *Seminole's* relevant holding here is its reconfirmation that Congress must use unequivocal statutory language if it intends to abrogate the sovereign immunity of states in suits brought by and for private parties. But as we already said in *Milam,* this is a non-issue in the False Claims Act context. There is simply no question of abrogation of immunity here. *Seminole* certainly left intact what is beyond purview: that the federal government may sue states in federal court. The United States is the real party in interest. The Act itself states that the "action shall be brought in the name of the Government." We affirm our reasoning in *Milam* : "[T]he states have no Eleventh Amendment immunity against the United States *ab initio.* Therefore, there is no reason Congress would have displaced it in the False Claims Act."

*United States ex. rel. Berge v. Board of Trustees of the University of Alabama,* 104 F.3d 1453, 1458–59 (4th Cir.1997), *cert. denied,* 522 U.S. 916, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997) (quoting *Milam,* 961 F.2d at 50, n. 3) (other internal citations omitted). Obviously, this Circuit considers states to be included as "persons" under the statute; indeed, in the *Berge* decision, the Circuit further discusses the merits of the claim against the University. Thus, inherent in the *Berge* decision is a determination that states are persons which may be sued and there is no Eleventh Amendment bar to such a suit. *United States ex rel. Long v. SCS Business & Technical Institute, Inc.,* 173 F.3d 870, 886 (D.C.Cir.

1999) ("[B]earing in mind that we must decide this difficult constitutional issue only if the term person in the Act is interpreted as including states....."), *supplemented at,* 173 F.3d 890, *petition for cert. filed* August 2, 1999 (The court was not obligated to address the Eleventh Amendment issue prior to consideration of whether the state was a person that could be sued).

Although this Circuit's precedent is binding in this action, the undersigned also finds the reasoning of the Second Circuit in *Stevens* compelling:

In the FCA, we see no alteration of "the usual constitutional balance of federal and state powers" such as to require application of the plain statement rule. The Act does not intrude into any area of traditional state power. The goal of the statute is simply to remedy and deter procurement of federal funds by means of fraud. The States have no right or authority, traditional or otherwise, to engage in such conduct.

*Stevens,* 162 F.3d at 204. To find otherwise would allow states to receive and administer federal medicaid funds with no obligation to answer for fraudulent conduct in connection therewith.

The undersigned also agrees with the statutory analysis conducted by the Second Circuit, both as to the use of the word "person" within the statute and as to its legislative history. *Id.,* at 204–06. Like the Fourth Circuit, the Second Circuit noted that the 1986 amendments to the Act were "designed to enhance the ability of the government to 'recover losses sustained as a result of fraud' against it in 'federal programs and procurement.' " *Id.,* at 206 (quoting Senate Report at 1–2, *reprinted in* 1986 U.S.C.C.A.N. at 5266). And, the Senate Report specifically states that the Act "*reaches* all parties who may submit false claims. The term 'person' is used in its broad sense to include partnerships, associations, and corporations ... as well as *States and political subdivisions*

*thereof . . . ." Id.,* at 207 (emphasis in original).

> In sum, [the undersigned] conclude[s] that the term "[a]ny person" in § 3729(a) is sufficiently broad to encompass the States; that Congress meant to include the States within the term "person" in § 3730(b)(1), allowing them to bring suits under that section as *qui tam* plaintiffs; that there is no indication in the language or in the legislative history that Congress ascribed different meanings to the term "person" as used in §§ 3729(a), 3730(a), and 3730(b)(1); and that Congress intended the false-claims statutes to permit suits under §§ 3730(a) and 3730(b)(1) against any entity that presented false monetary claims to the government.

*Id.,* at 207–08.

■ Next, Trend claims that the damages recoverable under the False Claims Act are "extracompensatory" or punitive in nature and therefore not applicable to it because it is a local political subdivision. The law has been well established for over 50 years that the damages provided by the Act are not punitive but remedial. "Although the False Claims Act, [ ] authorizes treble damages, the Supreme Court has determined that 'the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages. . . .'" *United States v. Brekke,* 97 F.3d 1043, 1048 (8th Cir. 1996), *cert. denied,* 520 U.S. 1132, 117 S.Ct. 1281, 137 L.Ed.2d 356 (1997) (quoting *United States v. Halper,* 490 U.S. 435, 446, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); citing *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551–52, 63 S.Ct. 379, 87 L.Ed. 443 (1943)); accord, *Stevens,* 162 F.3d at 207; *United States ex rel. Zissler v. Regents of University of Minnesota,* 154 F.3d 870, 873 (8th Cir.1998). Even the District of Columbia Circuit, which disagrees with the Second and Fourth Circuits concerning whether states may be sued under the Act, agrees that the damages provisions thereof are not punitive.

*United States ex rel. Long v. SCS Business & Tech. Inst.,* 999 F.Supp. 78, 86 (D.C.1998), *rev'd on other grounds,* 173 F.3d 870 (D.C.Cir.1999). Therefore, the damages provisions provide no impediment to the suit.

Concerning the allegation that the complaint fails to particularize fraud and mistake, Rule 9(b) provides that "[i]n .all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

> [T]he "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." ... A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.

*Harrison,* 176 F.3d at 784.

The complaint at issue alleges that Trend was to provide Community Alternatives Program for Persons with Mental Retardation/Developmental Disabilities (CAP) for a period beginning in 1992 and continuing through 1996. Complaint, at 3. In essence, this program provides an alternative to care in an intermediate care facility. *Id.* Trend provided community inclusion training to the CAP clients; *i.e.,* instruction to clients for independent living and social skills. *Id.,* at 4. Trend was also obligated to provide respite or temporary relief care to families of CAP clients. *Id.,* at 5. Under both of these programs, Trend was obligated to keep detailed records including progress notes, service dates, services provided and a description thereof. *Id.* It is alleged from January 4 through 31, 1996, Trend charged for com-

munity inclusion training provided to three clients simultaneously, in violation of the regulations. *Id.,* at 5. Trend charged Medicaid for service hours not performed from July through November 1995 and on March 9, 1996. *Id.,* at 5–6. Trend falsely billed for respite or temporary relief care on April 5, 1996, and April 29, 1996. It billed for services not approved by the case manager from July through December 1995 and again from January 1 through June 30, 1996. *Id.* In addition, Trend failed to properly document the services rendered on a number of invoices, including invoices submitted in December 1995 and from July 3, 1995, through December 3, 1995. *Id.* These allegations, which do not identify the case manager, contractor or client, are listed as examples of false claims submitted. Other incidents are referenced but no information is provided concerning the time, place, type of misrepresentation, or persons involved.[4]

■ Based on the stringent standards recently set forth by the Fourth Circuit in *Harrison,* the undersigned must conclude, *albeit* reluctantly, that the complaint is not sufficiently particular as to instances other than the examples provided. *Harrison,* 176 F.3d at 789. In the context of Medicaid fraud, it appears a cumbersome burden on the Plaintiffs to force such specific allegations at this point in the litigation. See, *e.g., United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997) ("[F]raud may be pled on information and belief under such circumstances...."). Nonetheless, the Circuit has so held and thus, the Plaintiffs will be given an opportunity to amend the complaints.[5] *Cooper v. Blue Cross and Blue Shield of Florida,* 19 F.3d 562, 568 (11th Cir.1994).

Thus, the Court has found that states are persons which may be sued under the False Claims Act, such suits are not barred by the Eleventh Amendment, and although the Plaintiffs' complaints are not sufficiently particularized, leave to amend is granted. The State's motion for judgment on the pleadings reiterates each of the grounds raised by Trend in its motion to dismiss and is denied on the same reasoning. The State's argument that it is only an innocent conduit for transmission of the federal funds to Trend is unsupported by any citation to authority and is rejected.

**C. Trend's motion to dismiss the State's cross-claims.**

Trend's motion to dismiss the State's cross-claims for indemnification and contribution is based on the same arguments rejected *infra* and is denied. The State also asserted cross-claims for breach of fiduciary duty, breach of contract, breach of statutory duty, breach of implied covenant of good faith and fair dealing and fraud. Trend claims these are derivative of the False Claims Act cause of action and therefore must be dismissed. That motion is denied. Trend also argues the allegations as to the remaining claims are insufficient to state causes of action and are not alleged with sufficient particularity. Since the Plaintiffs will amend their complaints, the State will serve an amended answer and may clarify its cross-claims therein. Thus, the motion is denied.

**D. The motion to consolidate.**

■ The Lindseys have moved to consolidate the *qui tam* action (Civil No. 1:97cv311) with the § 1983 action (Civil No. 1:98cv154). Trend and the United States oppose consolidation. Federal Rule of Civil Procedure 42(a) provides in pertinent part: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions...." The parties do

---

4. The Lindseys' complaint against the State suffers from the same deficiencies.

5. Nonetheless, the Court does not deem it appropriate to disclose the names of the individual clients in the complaint. Some other provision should be arrived at by mutual agreement of the parties.

not dispute the fact that the cases involve common questions of law and fact as well as common parties. However, the United States argues that the *qui tam* action involves more than 50 recipients of CAP services other than the Lindseys and proof of false claims as to those individuals would unnecessarily complicate the trial.

The Court is unable to perceive how this argument vitiates the appropriateness of consolidation. The 50 other recipients in the *qui tam* action will remain regardless of consolidation of the two actions. As noted above, the evidence relevant to other recipients may be relevant to the United States' common law claims against Trend as well as the Lindseys' common law claims against both the State and Trend. Shepard's, *supra*, at § 8.45. Nor does the Court find consolidation will result in inconvenience, delay or needless expense. *Id.* Indeed, neither Trend nor the United States has argued prejudice will result. *Id.* The Court finds any possible confusion to the jury may be removed by instructions. *Id.* Therefore, it is appropriate to consolidate these actions.

### III. ORDER

**IT IS, THEREFORE, ORDERED** that the motion to stay of Trend, filed July 2, 1999, and the motion to stay of the State, filed July 26, 1999, are hereby **DENIED;** and

**IT IS FURTHER ORDERED** that Trend's motion to dismiss pursuant to Rules 12(b)(6) and 9(b), filed March 15, 1999, is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the State's motion for judgment on the pleadings, filed May 17, 1999, is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that Trend's motion to dismiss the cross-claims asserted by the State, filed May 20,1999, is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the United States and the Lindseys may amend their complaints on or before 15 days from entry of this Order and the State may thereafter amend its cross-

claims within the time specified in the Federal. Rules of Civil Procedure;

**IT IS FURTHER ORDERED** that the Plaintiffs' motion to consolidate, filed July 9, 1999, is **ALLOWED,** and these actions are hereby consolidated as appears in the caption of this Memorandum and Order; and

**IT IS FURTHER ORDERED** that the Plaintiffs' motion for an attorney conference, filed July 9, 1999, is hereby **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court schedule an initial pretrial conference before the undersigned as soon as possible after service of the amended pleadings.